**LEAGUE OF UNITED LATIN AMERICAN CITIZENS, et al., Plaintiffs,**

**v.**

**Pete WILSON, et al., Defendants.**

**CHILDREN WHO WANT AN EDUCATION, et al., Plaintiffs,**

**v.**

**Pete WILSON, et al., Defendants.**

**Barbara AYALA, et al., Plaintiffs,**

**v.**

**Pete B. WILSON, et al., Defendants.**

**GREGORIO T., by and through his guardian ad litem, JOSE T.; et al., Plaintiffs,**

**v.**

**Pete WILSON, in his capacity as Governor of the State of California; et al., Defendants.**

**CARLOS P., et al., Plaintiffs,**

**v.**

**Pete B. WILSON, et al., Defendants.**

**Nos. CV 94–7569 MRP, CV 94–7570 MRP, CV 94–7571 MRP, CV 94–7652 MRP and CV 95–187 MRP.**

United States District Court, C.D. California.

Nov. 14, 1997.

Peter A. Schey, Los Angeles, CA, Carlos Holguin, National Center for Immigrants Rights Inc., Los Angeles, CA, Ann Kanter, Roxana Bacon, American Immigration Lawyers Association, Sacramento, CA, Lee A. O'Connor, Jonathon P. Foerstel, Legal Aid Society of San Diego, Inc., San Diego, CA, Morgan Rose, Legal Services Program, Eastern Valley Branch, Pomona, CA, Miguel G. Caballero, Union Privilege AFL-CIO, Los Angeles, CA, for plaintiffs in No. CV 94-7569 MRP.

Charlton G. Holland, III, California Asst. Atty. Gen., San Francisco, CA, for California State Board of Education.

Stephen Yagman, Marion Yagman, Yagman & Yagman, Venice, CA, for plaintiffs in No. CV 94-7570 MRP.

Bradley Stuart Phillips, Vilma S. Martinez, Eva Orlebeke Caldera, Munger, Tolles & Olson, Los Angeles, CA, Howard Friedman, Los Angeles Unified School District, Office of the Legal Adviser, Los Angeles, CA, for Los Angeles United School Dist. in No. CV 94-7570 MRP.

Fred J. Kumetz, Kumetz & Glick, Los Angeles, CA, for Andrea Ayala in No. CV 94-7571 MRP.

Jon M. Ichinaga, California Asst. Atty. Gen., Los Angeles, CA, for Pete Wilson in No. CV 94-7571 MRP.

Cyrus J. Rickards, California Asst. Atty. Gen., Sacramento, CA, for Daniel E. Lundgren in No. CV 94-7571 MRP.

Bruce G. Iwasaki, Alan Rader, Nancy E. Sussman, O'Melveny & Myers, Los Angeles, CA, Vibiana Andrade, Thomas A. Saenz, Antonia Hernandez, Mexican American Legal Defense & Education Fund, Los Angeles, CA, Mark D. Rosenbaum, Silvia Argueta, Mei Lin Kwan-Gett, ACLU Foundation of So. Calif., Los Angeles, CA, for Jose T. Gregorio T., Maria R., Virginia M., Gloria P., Maria G., R.G., Karina G., Angelica G., Cal. League of United Latin American Citizens in No. CV 94-7652 MRP.

Bruce G. Iwasaki, Alan Rader, Nancy E. Sussman, Vibiana Andrade, Thomas A. Saenz, Antonia Hernandez, Stewart Kwoh, Carolyn La, Asian Pacific American Legal Center of Southern California, Los Angeles, CA, Judy London, Central American Refugee Center, Los Angeles, CA, Mark D. Rosenbaum, Laura C. Fry, Silvia Argueta, Mei Lin Kwan-Gett, ACLU Foundation of So. Calif., William R. Tamayo, Asian Law Caucus Inc., San Francisco, CA, Karl Manheim, Loyola Law School, Los Angeles, CA, Lucas Guttentag, ACLU Immigrants' Rights Project, New York City, Susan Lydon, Mark Silverman, Immigrant Legal Resource Center, San Francisco, CA, Sarah Jane Somers, San Francisco, CA, for Xiomara T. in No. CV 94-7652 MRP.

David Jonathan Becker, Loeb & Loeb, Los Angeles, CA, Vibiana Andrade, Thomas A. Saenz, Antonia Hernandez, Elisa Fernandez Cabello, Mexican American Legal Defense & Education Fund, Los Angeles, CA, Stewart Kwoh, Carolyn La, Asian Pacific American Legal Center of Southern California, Los Angeles, CA, Mark D. Rosenbaum, Laura C. Fry, Silvia Argueta, Mei Lin Kwan-Gett, ACLU Foundation of So. Cal., Los Angeles, CA, Judy London, Michele A. Milner, Central American Resource Ctr. Legal Office, Los Angeles, CA, William R. Tamayo, Asian Law Caucus Inc., San Francisco, CA, Karl Manheim, Loyola Law School, Los Angeles, CA, Lucas Guttentag, ACLU Immigrants' Rights Project, New York City, Susan Lydon, Mark Silverman, Immigrant Legal Resource Center, San Francisco, CA, Sarah Jane Somers, San Francisco, CA, Kurtiss Lee Grossman, Kurtiss L. Grossman Law Offices, Los Angeles, CA, Carmela Castellano, Stefan Rosenzweig, Public Advocates, San Francisco, CA, for Guardian Ad Litem Jesus C. in No. CV 94-7652 MRP.

Douglas E. Mirell, David Jonathan Becker, Loeb & Loeb, Los Angeles, CA, Vibiana Andrade, Thomas A. Saenz, Antonia Hernandez, Elisa Fernandez Cabello, Mexican American Legal Defense & Education Fund, Los Angeles, CA, Mark D. Rosenbaum, Silvia Argueta, Mei Lin Kwan-Gett, ACLU Foundation of So. Cal., Los Angeles, CA, Kurtiss Lee Grossman, Kurtiss L. Grossman Law Offices, Los Angeles, CA, for Guardians Ad Litem Blanca D., and Estela A., Luz D., Leonardo D., Araceli O., Maximiliano B., and David S. in No. CV 94-7652 MRP.

Charlton G. Holland, III, Jon M. Ichinaga, Donald P. Cole, California Asst. Attys. Gen., Los Angeles, CA, for Pete Wilson, Eloise Anderson in No. CV 94-7652 MRP.

Linda A. Cabatic, Cyrus J. Rickards, California Asst. Atty. Gen., Sacramento, CA, for Dan Lungren in No. CV 94-7652 MRP.

Janet G. McCormick, California Department of Education, Sacramento, CA, Joyce O. Eckrem, California State Department of Education, Sacramento, CA, for Delaine Eastin in No. CV 94-7652 MRP.

James E. Holst, John F. Lundberg, David M. Birnbaum, Gary Morrison, University of California, General Counsel, Oakland, CA, for William T. Bagley, Roy T. Brophy, Clair W. Burgener, Glenn Campbell, Frank W. Clark, Jr., Ward Connerly, John Nmi Davies, Tirso Del Junco, Alice J. Gonzales, S. Sue Johnson, Meredith J. Khachigian, Leo S. Kolligian, Howard H. Leach, David S. Lee, Velma Montoya, S. Stephan Nakashima, Tom Sayles, Dean A. Watkins, Terrence Wooten, Judith Willick Levin, Ralph C. Carmona, Pete Wilson, Gray Davis, Speaker of the California Assembly, Delaine Eastin, David Flinn, Peter Preuss, Jack W. Peltason, and Jack Nmi Peltason in No. CV 94-7652 MRP.

Christine Helwick, Lee R. Rydalch, Jessica K. Frazier, California State University, Long Beach, CA, for Roland E. Arnall, Marian Bagdasarian, William D. Campbell, Ronald

L. Cedillos, Jim Considine, Jr., Martha C. Fallgatter, Bernard Goldstein, James H. Gray, William Hauck, Christopher A. Lowe, Joan Otomo-Corgel, Ralph R. Pesqueira, Ted J. Saenger, J. Gary Shansby, Michael D. Stennis, Anthony M. Vitti, Stanley T. Wang, Pete Wilson, Speaker of the California Assembly, Gray Davis, Delaine Eastin, Barry Munitz in No. CV 94-7652 MRP.

Jon M. Ichinaga, California Asst. Atty. Gen., Los Angeles, CA, John Hideki Sugiyama, California Asst. Atty. Gen., San Francisco, CA, for Larry Toy, Joe Dolphin, Alice S. Petrossian, John W. Rice, Jr., Robert A. Alleborn, Philip E. Del Campo, Yvonne Gallegos Bodle, Timothy Haidinger, Paul M. Kim, Vishwas D. More, Paul Priolo, Shirley Ralston, Wilbert L. Smith, Julia Li Wu, David Nmi Mertes in No. CV 94-7652 MRP.

### MEMORANDUM OF LAW RE: REMAINING ISSUES IN CONSOLIDATED CASES

PFAELZER, District Judge.

## I.

### BACKGROUND

Proposition 187 is an initiative measure which was submitted to the voters of the State of California in the November 8, 1994 general election. The stated purpose of Proposition 187 is to "provide for cooperation between [the] agencies of state and local government with the federal government, and to establish a system of required notification by and between such agencies to prevent illegal aliens in the United States from receiving benefits or public services in the State of California." Prop. 187, § 1. The initiative's provisions require law enforcement, social services, health care and public education personnel to (i) verify the immigration status of persons with whom they come in contact; (ii) notify certain defined categories of persons of their immigration status; (iii) report those persons to state and federal officials; and (iv) deny those persons social services, health care and education.

A. *Procedural History Prior to the Enactment of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("PRA")*

After Proposition 187 was passed, several actions challenging the constitutionality of the initiative were commenced in state and federal courts in California. Ultimately, five actions filed in the United States District Court were consolidated in this Court for purposes of pre-trial proceedings and trial (collectively, the "consolidated actions").[1, 2]

The plaintiffs in the consolidated actions filed suit for declaratory and injunctive relief seeking to bar California Governor Pete Wilson ("Wilson"), Attorney General Dan Lungren ("Lungren"), and other state actors[3]

---

1. Those cases are as follows:

 (1) *League of United Latin American Citizens v. Wilson,* Case No. CV 94–7569 MRP.

 (2) *Children Who Want an Education v. Wilson,* 908 F.Supp. 755 (C.D.Cal.1995).

 (3) *Ayala v. Pete B. Wilson,* Case No. CV 94–7571 MRP.

 (4) *Gregorio T. v. Wilson,* Case No. CV 94–7652 MRP.

 (5) *Carlos P. v. Wilson,* Case No. CV 95–0187 MRP.

2. The Court has permitted the following parties to intervene as plaintiffs: (1) the City of Los Angeles; (2) the California Association of Catholic Hospitals and the Catholic Health Association of the United States (collectively "Catholic Hospitals"); (3) California Teachers Association, California Faculty Association, American Federation of State, County and Municipal Employees AFL—CIO, and Service Employees International Union AFL—CIO (collectively "CTA"); and (4) Islamic Center of Southern California, Muslim Public Affairs Council and California Council of Churches (collectively "Islamic Center").

3. All plaintiffs have sued Governor Pete Wilson and Attorney General Dan Lungren.

 In addition, LULAC plaintiffs named Acting State Superintendent of Public Instruction William Dawson ("Dawson") (who was replaced by the current Superintendent Delaine Eastin ("Eastin")); director of Department of Social Services Eloise Anderson ("Anderson"); Director of Department of Health Kimberly Belshe ("Belshe"); California State Board of Education; Department of Education; Orange Unified School District; Tustin Unified School District; and San Diego Unified School District.

 Children plaintiffs also named Los Angeles Unified School District and the State of California.

 Ayala plaintiffs also named Dawson (who was replaced by Eastin); Alhambra Unified School

(collectively, "defendants") from enforcing the provisions of Proposition 187.

On November 16, 1994, a temporary restraining order was granted enjoining the implementation of sections 4, 5, 6, 7 and 9 of the initiative. On December 14, 1994, the Court granted plaintiffs' motions for a preliminary injunction, enjoining the implementation and enforcement of those sections.[4]

On May 1, 1995, the League of United Latin American Citizens ("LULAC") and Gregorio T. plaintiffs brought motions for summary judgment in which they contended that Proposition 187 is unconstitutional on the sole ground that the initiative is preempted by the federal government's exclusive constitutional authority over the regulation of immigration, Congress' exercise of that power through the Immigration and Nationality Act ("INA"), and other federal statutes.[5] Defendants opposed the LULAC and Gregorio T. motions on the grounds that Proposition 187 is not preempted and, alternatively, that if any portion of the initiative is preempted, the remaining portions are valid and must be upheld.

On November 20, 1995, the Court granted in part and denied in part the plaintiffs' motions for summary judgment. The Court granted the motions for summary judgment with respect to the classification, notification and cooperation/reporting provisions in sections 4 through 9 of the initiative on the ground that these provisions created an impermissible state scheme to regulate immigration and were therefore preempted by federal law. *LULAC v. Wilson,* 908 F.Supp. 755, 786–87 (C.D.Cal.1995). The Court held that section 7's denial of primary and secondary education conflicted with the decision reached by the Supreme Court in *Plyler v. Doe,* 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982), and should be enjoined.[6] *LULAC,* 908 F.Supp. at 787.

The Court denied plaintiffs' motions with respect to sections 2 and 3. The Court also denied plaintiffs' motions for summary judgment regarding the benefits denial provisions in sections 5, 6 and 8. The benefits denial provisions in sections 5 and 6 deny public social services and publicly-funded health care to "an alien in the United States in violation of federal law." Giving great defer-

District; and Superintendent of the Alhambra Unified School District Heber Meeks (who was replaced by Richard Keilhacker).

Gregorio T. plaintiffs also named Dawson (who was replaced by Eastin); Anderson; Belshe; individuals who are the members of the California State Board of Education, in their official capacities; individuals who are the Regents of the University of California, in their official capacities; Jack Peltason, president of the University of California (who was replaced by Richard C. Atkinson); individuals who are the Trustees of the California State University, in their official capacities; Barry Munitz, the Chancellor of the California State University, individuals who are the members of the Board of Governors of the California Community Colleges, and David Mertes, Chancellor of the California Community Colleges (who was replaced by Tom Nussbaum).

Catholic Hospitals, Islamic Center, and CTA, plaintiffs-in-intervention, each filed a complaint against the same persons who were named as defendants by the Gregorio T. plaintiffs.

**4.** In February 1995, Defendants Wilson, Belshe and Anderson brought a motion for abstention, or in the alternative, to dismiss for failure to state a claim. Lungren joined in the motion for abstention and also moved to dismiss. In March 1995, the Court denied these motions and set this case for trial. The defendants appealed this Court's preliminary injunction against imple-

mentation and enforcement of sections 4, 5, 6, 7, and 9 of Proposition 187. The defendants limited their argument on appeal to a claim that this Court improperly entered a preliminary injunction because it is required to abstain under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), or *Railroad Comm'n v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). The Ninth Circuit Court of Appeals held that this Court did not abuse its discretion by declining to abstain at the preliminary injunction stage. *Gregorio T. by and through Jose T. v. Wilson,* 59 F.3d 1002 (9th Cir.1995).

**5.** The following parties joined in LULAC's motion: defendant San Diego Unified School District; defendant and amicus curiae Los Angeles Unified School District; and plaintiffs-intervenors Catholic Hospitals and Islamic Center.

The following parties joined in Gregorio T.'s motion: Carlos P. and Ayala plaintiffs; plaintiffs-intervenors City of Los Angeles, CTA, Catholic Hospitals and Islamic Center; and defendant and amicus curiae Los Angeles Unified School District.

**6.** Although plaintiffs' motions were based on preemption, the Court was bound to take *Plyler* into account. *See* Section IIA2b(2)(b) of this Opinion *infra* for a further discussion of section 7.

ence to the defendants' argument that the benefits denial provisions were severable from the classification, notification and cooperation/reporting provisions, the Court denied the motions with respect to the benefits denials provisions of sections 5 and 6 to give the defendants the opportunity to promulgate regulations that would bring the procedures for the denial of benefits into conformity with federal law. *See, e.g., LULAC,* 908 F.Supp. at 773. The Court also denied the motions for summary judgment regarding section 8, which denies postsecondary education to anyone "not a citizen of the United States, an alien lawfully admitted as a permanent resident, in the United States, or a person who is otherwise authorized under federal law to be present in the United States." The Court ordered that the preliminary injunction of December 14, 1994 remain in effect until further order of the Court. *LULAC,* 908 F.Supp. at 787.

As stated, a principal issue in these cases has been whether defendants could in fact design and implement regulations that would cure the obvious flaws not just in the draftsmanship of Proposition 187, but in the way it was intended to work. Defendants repeatedly argued that they could. At the hearing for the temporary restraining order, defendants claimed regulations would "resolve any problems." TRO Hearing Transcr. at 78–79 (Nov. 16, 1994). One month later, defendants stated in papers filed with the Court that, "California Governor Pete Wilson and the administrative agencies under his executive authority have repeatedly said [regulations] will ensure an orderly implementation *consistent* with federal law." Defs.' Resp. to Supp. Mem. of Law Re Relationship Between Prop. 187 and the INA at 1 (emphasis add-

ed). At the preliminary injunction hearing, defendants requested the opportunity to "create a comprehensive system of regulations that deal with the problems...." Prelim. Inj. Transcr. at 80–81 (Dec. 14, 1994). At the summary judgment hearing, defendants again asked the Court for the opportunity to produce regulations to show that Proposition 187 could be implemented in a manner consistent with federal immigration law. Summ. J. Transcr. at 73 (Oct. 23, 1995).

In the argument of the various motions in the case, defendants freely admitted the need for extensive curative regulations. Counsel for defendants told the Court that the state desired to apply the "surgical powers of the regulatory bodies of the state" in promulgating regulations to remedy what were obvious problems with the initiative. Prelim. Inj. Transcr. at 56 (Dec. 14, 1994). In response, the Court repeatedly expressed doubt that regulations could remedy the defects in Proposition 187.[7]

On March 29, 1996, the defendants did draft and file under seal regulations for two state-funded benefits programs, but no further action was taken to implement regulations *under Proposition 187.*

### B. *Enactment of the PRA*

On August 22, 1996, the President signed the PRA. The PRA creates a comprehensive statutory scheme for determining aliens' eligibility for federal, state and local benefits and services. It categorizes all aliens as "qualified" or not "qualified" and then denies public benefits based on that categorization.[8] In the PRA, Congress expressly stated a national policy of restricting the availability of public benefits to aliens. The "Statement

---

**7.** At the preliminary injunction hearing, the Court stated, "You would virtually have to stitch up every Section of 187 with regulations and I am quite sure it can't be done." Prelim. Inj. Transcr. at 55 (Dec. 14, 1994).

**8.** Congress defines "qualified alien" as follows:
For purposes of this chapter the term "qualified alien" means an alien who, at the time the alien applies for, receives, or attempts to receive a Federal public benefit, is—
(1) an alien who is lawfully admitted for permanent residence under the Immigration and Nationality Act [8 U.S.C.A. § 1101 et seq.],

(2) an alien who is granted asylum under section 208 of such Act [8 U.S.C.A. § 11580],
(3) a refugee who is admitted to the United States under section 207 of such Act [8 U.S.C.A. § 1157],
(4) an alien who is paroled into the United States under section 212(d) of such Act [8 U.S.C.A. § 1182(d)(5) ] for a period of at least 1 year,
(5) an alien whose deportation is being withheld under section 243(h) of such Act [8 U.S.C.A. § 1153(a)(7) ].
8 U.S.C. § 1641(b).

of national policy concerning welfare and immigration," section 1601, provides in pertinent part:

(2) It continues to be the immigration policy of the United States that—

. . . . .

(B) the availability of public benefits not constitute an incentive for immigration to the United States.

(3) Despite the principle of self-sufficiency, aliens have been applying for and receiving public benefits from Federal, State, and local governments at increasing rates.

(4) Current eligibility rules for public assistance and unenforceable financial support agreements have proved wholly incapable of assuring that individual aliens not burden the public benefits system.

(5) *It is a compelling government interest to remove the incentive for illegal immigration provided by the availability of public benefits.*

8 U.S.C. § 1601 (emphasis added).

On November 1, 1996, the Court denied plaintiffs' application for a restraining order against the state's promulgation of regulations *pursuant to the PRA. LULAC*, No. 94-7569 (C.D.Cal. Nov. 1, 1996). On January 10, 1997, defendants, relying on the PRA, moved for reconsideration of part of the Court's November 20, 1995 Opinion. Defendants asked the Court to reconsider only the "reporting and cooperation" provisions, which are sections 4(a), 4(b)(3), 4(c), 5(c)(3), 6(c)(3), 8(c) (first sentence only) and 9 of the initiative. The Court denied the motion on March 3, 1997.[9]

On March 24, 1997, defendants brought a motion for partial judgment on the pleadings as to sections 2 and 3 of Proposition 187. The Court granted the motion as to section 2 and denied it with respect to section 3.

At the May 1997 status conference, after many months of arguing that regulations could be drafted to cure the flaws in the initiative, the defendants informed the Court that regulations are not needed to meet the constitutional challenges made to the initiative. Defendants' final position, stated unequivocally, is that the defendants do not intend to promulgate regulations *to implement Proposition 187* and wish the Court to decide the issues without the benefit of any curative effect the regulations might have had. Status Conference Transcr. at 6 (May 19, 1997). The reason for this change of position is apparent: the defendants recognize, as the Court does, that California must now enact regulations *pursuant to the PRA*, not pursuant to Proposition 187.

## II.

### DISCUSSION

The remaining provisions in Proposition 187 are sections 1, 3, and 10 and portions of sections 5, 6 and 8.[10] This Memorandum will discuss whether the PRA preempts any of these provisions of Proposition 187. It will also reconsider whether the verification, notification, and cooperation/reporting provisions of Proposition 187, which the Court's November 20, 1995 Opinion held were preempted, are severable from the remaining benefits denial provisions in sections 5 and 6. It will then discuss whether section 3 is valid. Finally, it will determine whether sections 1 and 10 are valid and enforceable.

A. *The PRA Preempts the Remaining Provisions of Sections 5, 6 and 8*

1. The *De Canas* Tests

The question of whether the benefits denial provisions in sections 5, 6 and 8 are

---

**9.** Defendants argued that the PRA permits cooperation between state and local government entities and the INS. (State Defs.' Mem. of P & A in Sup. of Defs.' Mot. for Reconsid. of Court's Nov. 20, 1995 Opinion). The Court agrees that some cooperation is permitted and even required by the PRA. However, the cooperation and reporting detailed in Sections 4(a), 4(b)(3), 4(c), 5(c)(3), 6(c)(3), 8(c) (first sentence only) and 9 of Proposition 187 are part of a regulatory scheme preempted by federal law, as explained in the Court's November 20, 1995 Opinion. These sections of Proposition 187 require state officials,

teachers, health care providers and other unknown individuals to report to the I.N.S. information about alien status that such individuals are not permitted to determine. Nothing in the Court's decision should be interpreted to prohibit cooperation between state officials and the I.N.S. *pursuant to the PRA.*

**10.** On March 24, 1997, the Court granted judgment on the pleadings to defendants with respect to section 2. Section 2 is no longer at issue.

preempted by federal law is governed by the Supreme Court's decision in *De Canas v. Bica,* 424 U.S. 351, 96 S.Ct. 933, 47 L.Ed.2d 43 (1976) (holding that California statute prohibiting an employer from knowingly employing an alien who is not entitled to lawful residence in the United States was not preempted under federal law). In *De Canas,* the Supreme Court articulated three tests to be used in determining whether a state statute related to immigration is preempted. Pursuant to *De Canas,* if a statute fails any one of the three tests, it is preempted by federal law.

■ Under the first test, the Court must determine whether a state statute is a "regulation of immigration." Since the "[p]ower to regulate immigration is unquestionably exclusively a federal power," *id.* at 354, any state statute that regulates immigration is "constitutionally proscribed." *Id.* at 356.

■ Under the second test, even if the state statute is not an impermissible regulation of immigration, it may still be preempted if there is a showing that it was the "clear and manifest purpose of Congress" to effect a "complete ouster of state power—including state power to promulgate laws not in conflict with federal laws" with respect to the subject matter which the statute attempts to regulate. *Id.* at 357. An intent to preclude state action may be inferred "where the system of federal regulation is so pervasive that no opportunity for state activity remains." *Gonzales v. City of Peoria,* 722 F.2d 468, 474 (9th Cir.1983); *see also De Canas,* 424 U.S. at 357 (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)). Under the second test, a statute is preempted where Congress intended to "occupy the field" that the statute attempts to regulate.

■ Under the third test, a state law is preempted if it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *De Canas,* 424 U.S. at 363 (*citing Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941)). Stated differently, a statute is preempted under the third test if it conflicts with federal law, making compliance with both state and federal law impossible. *Michigan Canners & Freezers v. Agricultural Marketing and Bargaining Board,* 467 U.S. 461, 469, 104 S.Ct. 2518, 81 L.Ed.2d 399 (1984); *Florida Lime & Avocado Growers v. Paul,* 373 U.S. 132, 142–43, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963).

2. The Application of the Tests in Light of the PRA

a. The PRA does not affect the Court's prior analysis of the first test.

As the Court determined in its November 20, 1995 Opinion, if the benefits denial provisions are severed from the verification, notification and reporting provisions of Proposition 187, they do not impermissibly regulate immigration because they do not amount to a determination of "who is and who is not 'lawfully admitted' in this country." *LULAC,* 908 F.Supp. at 770, 772. The federal government's exclusive control over immigration is derived from the Constitution and is unaffected by the PRA. The Court's analysis of the first test is likewise unaffected by the PRA.

b. The benefits denial provisions are preempted because the PRA occupies the field.

The intention of Congress to occupy the field of regulation of government benefits to aliens is declared throughout Title IV of the PRA. Whatever the level of government extending the benefits and whatever the source of the funding for the benefits—federal, state or local—they are all included within the expansive reach of the PRA. The new law includes: statements of national policy regarding the denial of public benefits to illegal immigrants (8 U.S.C. § 1601); rules regarding immigrant eligibility for federal, state and local benefits, including definitions of the benefits covered (8 U.S.C. §§ 1611; 1621); a description of state legislative options in the area of immigrant eligibility for state or local benefits (8 U.S.C. § 1621(d)); and a system for verifying immigration status to determine eligibility for benefits and services (8 U.S.C. § 1642). Together, these provisions both demarcate a field of comprehensive federal regulation within which states may not legislate,

and define federal objectives with which states may not interfere.

(1) The national immigration policy calls for the denial of public benefits to aliens.

In its November 20, 1995 Opinion, the Court concluded that the benefits denial provisions of sections 5 and 6 were not preempted because they passed the three tests set out in *De Canas*. The Court noted that plaintiffs had failed to cite any authority indicating Congress' intent to completely oust the states' power either to grant or deny aliens public benefits paid for exclusively with state funds. *LULAC*, 908 F.Supp. at 787. However, in enacting the PRA, Congress has made it clear that it is the immigration policy of the United States to deny public benefits to all but a narrowly defined class of immigrants which does not include illegal immigrants. In a sweeping statement, Congress has announced that there is a "compelling government interest to remove the incentive for illegal immigration provided by the availability of public benefits." 8 U.S.C. § 1601. This policy statement concerning the relationship between welfare and immigration leaves no doubt that the federal government has taken full control of the field of regulation of public benefits to aliens.

(2) Specific provisions of the PRA demonstrate that Congress has occupied the field of regulation of benefits to aliens.

Congress has ousted state power in the field of regulation of public benefits to immigrants by enacting legislation that denies federal, state and local health, welfare and postsecondary education benefits to aliens who are not "qualified." 8 U.S.C. §§ 1611, 1621.[11]

Any alien not a "qualified" alien is ineligible for any federal benefit. 8 U.S.C. § 1611(a). Federal benefits include "any ... welfare, health ... postsecondary education, food assistance ... or any other similar benefit ...." 8 U.S.C. § 1611(c). Similarly, any alien not a "qualified" alien, a "nonimmigrant" under the INA, or an alien "paroled into the United States" under the INA is ineligible for any state or local benefit. 8 U.S.C. § 1621(a). The PRA defines "State or local benefit" in the same words used to define "Federal benefit." 8 U.S.C. § 1621(c).

---

**11.** Under "Subchapter I—Eligibility for Federal Benefits," section 1611 provides in relevant part:

(a) Notwithstanding any other provisions of law and except as provided in subsection (b) of this section, an alien who is not a qualified alien (as defined in section 1641 of this title) is not eligible for any Federal public benefit (as defined in subsection (c) of this section).

. . . . .

(c) ... for the purposes of this chapter the term "Federal public benefit" means—
(A) any grant, contract, loan, professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States and
(B) any retirement, welfare, health, disability, public or assisted housing, postsecondary education, food assistance, unemployment benefit, or any other similar benefit for which payments or assistance are provided to an individual, household, or family eligibility unit by an agency of the United States or by appropriated funds of the United States.
8 U.S.C. § 1611.
Under "Subchapter II—Eligibility for State and Local Public Benefits Programs," section 1621 states, in pertinent part:

(a) Notwithstanding any other provisions of law and except as provided in subsections (b) and (d), an alien who is not—
(1) a qualified alien (as defined in section 431),
(2) a nonimmigrant under the Immigration and Nationality Act, or
(3) an alien who is paroled into the United States under section 212(d)(5) of such Act for less than one year, is not eligible for any State or local public benefits (as defined in subsection (c)).

. . . . .

(c)(1) Except as provided in paragraphs (2) and (3), for purposes of this subtitle the term 'State or local public benefit' means—
(A) any grant, contract, loan, professional license, or commercial license provided by an agency of a State or local government or by appropriated funds of a State or local government; and
(B) any retirement, welfare, health, disability, public or assisted housing, postsecondary education, food assistance, unemployment benefit, or any other similar benefit for which payments or assistance are provided to an individual household, or family eligibility unit by an agency of a State or local government or by appropriated funds of a State or local government.
8 U.S.C. § 1621.

(a) Sections 5 and 6 of Proposition 187 are preempted.

 Federal, state or local public benefits, as defined in the PRA, include social services and health services, which are the same benefits covered by sections 5 and 6 of Proposition 187. *See* 8 U.S.C. § 1611(c)(1)(B). Because the PRA is a comprehensive regulatory scheme that restricts alien eligibility for all public benefits, however funded, the states have no power to legislate in this area. If the state cannot legislate to grant or deny public benefits, then certainly the state cannot promulgate regulations to effectuate that goal. The only regulations that California can promulgate now are regulations implementing the PRA. In fact, the state has already moved to put in place just such regulations, contending that it is required to do so by federal law. *See Doe v. Wilson*, 57 Cal. App.4th 296, 67 Cal.Rptr.2d 187 (1997); 57 Cal.App.4th 296, 67 Cal.Rptr.2d 187 (upholding State of California's enforcement of emergency regulations enacted to conform with the PRA).[12] Any further argument by the defendants that they can promulgate regulations to effectuate *Proposition 187* in accordance with federal law would be specious.

Congress has expressly exercised its authority to establish the procedure that must be followed in verifying immigrant eligibility for federal, state and local benefits. The states have no power to effectuate a scheme parallel to that specified in the PRA, even if the parallel scheme does not conflict with the PRA. 8 U.S.C. §§ 1642(a). The PRA explicitly directs the United States Attorney General to promulgate regulations setting forth the procedures by which a state or local government can verify whether an alien applying for a federal, state or local public benefit is a "qualified" alien for purposes of determining whether the alien is eligible for benefits under the PRA. 8 U.S.C. § 1642(a). California is bound to follow the verification procedures prescribed by the PRA.

Congress' intention to displace state power in the area of regulation of public benefits to immigrants is manifest in the careful designation of the limited instances in which states have the right to determine alien eligibility for state or local public benefits. Section 1621(d) provides that a state may override the general bar in Section 1621(a) only by enacting a state law after August 22, 1996 that provides state or local public benefits to aliens not "qualified" under the PRA. Section 1622 provides states with the option of further restricting the eligibility of "qualified" aliens for state public benefits. That is all the states are permitted to do. The PRA defines the full scope of permissible state legislation in the area of regulation of government benefits and services to aliens.

(b) The PRA expressly defers to *Plyler v. Doe*.

 Section 7 of Proposition 187 denies public elementary and secondary education to any child not "a citizen of the United States, an alien lawfully admitted as a permanent resident, or a person who is otherwise authorized under federal law to be present in the United States." § 7. The Court found section 7 invalid on the ground that in *Plyler v. Doe*, 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982), the Supreme Court held that a state cannot deny basic public education to children based on their immigration status. *LULAC*, 908 F.Supp. at 785.

The PRA provides strong support for this finding. As stated, the PRA is a comprehensive statutory scheme regulating alien eligibility for government benefits. It does not deny public elementary and secondary education to aliens, but it does specifically deal with the subject of basic public education. Section 1643 provides, "Nothing in this chapter may be construed as addressing alien eligibility for a basic public education as determined by the Supreme Court of the United States under *Plyler v. Doe* (457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786) (1982)." 8 U.S.C. § 1643. Thus, although basic public education clearly must be classified as a government benefit, just as health care is, the PRA does not purport to deny it to non-qualified aliens. Proposition 187 cannot do

---

**12.** On November 12, 1997, the California Supreme Court declined to grant review in *Doe v. Wilson*.

that either under the present state of the law.

### (c) Section 8 is preempted.

 Section 8 of Proposition 187 denies public postsecondary education to anyone not a "citizen of the United States, an alien lawfully admitted as a permanent resident, in the United States, or a person who is otherwise authorized under federal law to be present in the United States." [13] § 8. Section 1611 of the PRA denies federal postsecondary education benefits to any alien who is not a "qualified" alien. 8 U.S.C. § 1611. Section 1621 denies state and local postsecondary education benefits to any alien who is not a "qualified" alien, a nonimmigrant under the INA, or an alien paroled into the United States under section 212(d)(5) of the INA. 8 U.S.C. § 1621. For all practical purposes, the preemption analysis with respect to section 8 of Proposition 187 is the same as the analysis for sections 5 and 6. Congress has occupied the field of regulation of public postsecondary education benefits to aliens.

There is further evidence that Congress has occupied the field of regulation of public postsecondary education benefits to aliens. On September 30, 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IRA"). The IRA regulates alien eligibility for postsecondary education benefits on the basis of residence within a state. 8 U.S.C. § 1623(a). Because the IRA defines alien eligibility for postsecondary education, it also manifests Congress' intent to occupy this field.

3. The PRA preempts sections 5 and 6 because there is a conflict between these sections and the PRA.

 Sections 5 and 6 of Proposition 187 deny public social services and health benefits to persons "in the United States in violation of federal law." §§ 5; 6. The PRA denies federal benefits to aliens who are not "qualified." 8 U.S.C. § 1611. The PRA denies state and local benefits to aliens who are not "qualified"; nonimmigrants under the INA; or aliens who are paroled into the United States under section 212(d)(5) of the INA for less than one year. 8 U.S.C. § 1621.

Without further definition, the term used in sections 5 and 6 of Proposition 187, "alien in the United States in violation of federal law," is vague.[14] Before the Court's decision striking the classification scheme in subsection (b) of sections 5 and 6, the term "alien in the United States in violation of federal law" referred to the state classification scheme in subsection (b) for its definition. However, the Court struck subsection (b) because it was part of a state scheme to regulate immigration and was therefore preempted by federal law. Thus, the remaining term "alien in the United States in violation of federal law" now stands alone without a definition. It was argued that regulations conforming to federal law would supply this definition and thus validate the benefits denial provisions of sections 5 and 6. Without regulations, it is left to the Court to supply a definition.

The Court cannot interpret "alien in the United States in violation of federal law" in Proposition 187 as meaning a person who is not a "qualified" alien under the PRA. To do so would be contrary to the rules of statutory construction. *See Blair v. Pitchess*, 5 Cal.3d

**13.** A challenge to section 8 is currently before the Honorable Stuart R. Pollack. *Jesus Doe, et al. v. Regents of the University of California, et al.,* California Superior Court for the City and County of San Francisco, Case No. 965090. Although there is ongoing state court litigation concerning section 8, this Court declines to abstain on the ground that *Pullman* abstention is inappropriate when preemption is the basis for the federal court's decision. *See Knudsen Corp. v. Nevada State Dairy Comm'n,* 676 F.2d 374, 377 (9th Cir.1982).

**14.** The difference between the classification scheme in sections 5 and 6 and the classification

scheme in sections 7 and 8 is an example of the Proposition's poor draftsmanship. Sections 5 and 6 refer to a "citizen of the United States," an "alien lawfully admitted as a permanent resident," an "alien lawfully admitted for a temporary period of time" and an "alien in the United States in violation of federal law," while sections 7 and 8 refer to a "citizen of the United States, an alien lawfully admitted as a permanent resident, in the United States, or a person who is otherwise authorized under federal law to be present in the United States." There is no apparent explanation for this inconsistency.

258, 282, 96 Cal.Rptr. 42, 59, 486 P.2d 1242, 1259 (1971) (holding that a court is not permitted to rewrite a statute); *see also Heckler v. Mathews*, 465 U.S. 728, 741–42, 104 S.Ct. 1387, 79 L.Ed.2d 646 (1984). Therefore, the term from sections 5 and 6, "alien in the United States in violation of federal law" conflicts with the classifications in the PRA, making compliance with both laws impossible. For this reason, sections 5 and 6 are preempted by the PRA pursuant to the third *De Canas* test.

A specific provision of the PRA clearly conflicts with Proposition 187. The PRA delineates which state or local public benefits are to be denied to aliens who are not "qualified." 8 U.S.C. § 1621(c). The Act provides several general exceptions that preserve immigrant eligibility for certain programs and services, creating plain conflicts with the broader prohibitions in Proposition 187.[15] 8 U.S.C. § 1621(b).[16] For example, this Court has concluded that "section 5 broadly denies any and all aid, services and programs administered or supervised by the state departments of social and health services." *LULAC*, 908 F.Supp. at 780. The Court also determined that section 6 of the initiative enacts a similarly broad proscription. *See id.* at 783. It is obvious that these provisions of Proposition 187 conflict with the more limited restrictions in the PRA.

B. *Provisions of Sections 5, 6 and 7 are Not Severable From Remaining Benefits Denial Provisions.*

In light of relatively recent developments in the litigation of these cases, the Court must now discuss an alternative ground of invalidity. As stated, in its November 20, 1995 Opinion, the Court held that the classification, notification and cooperation/reporting provisions of Proposition 187 were preempted in that these provisions purported to regulate immigration, an area exclusively re-served to the federal government. The Court's decision was based on an analysis of the three *De Canas* tests as applied to the initiative. Thus, under section 5(b), a person could not receive public social services until that person's status was verified as a citizen of the United States, a permanent resident, or "[a]n alien lawfully admitted for a temporary time." § 5(b). Section 6(b) provided essentially the same classification system for publicly-funded health care services. The Court found that sections 5(b) and 6(b) were preempted in that they purported to create a state classification scheme for immigrants requiring state agents "to make independent determinations of who is and who is not 'lawfully admitted' in this country...." *LULAC*, 908 F.Supp. at 772. The Court also held that sections 5(b) and 6(b) were preempted because Congress intended to occupy the field of immigration regulation, and these provisions conflicted with federal laws governing procedures for the deportation of aliens. *Id.* at 777.

The Court further found that portions of sections 5(c) and 6(c) were preempted. Section 5(c) of Proposition 187 provides: "If any public entity in this state to whom a person has applied for public social services determines or reasonably suspects, based upon the information provided to it, that the person is an alien in the United States in violation of federal law," the entity must deny benefits or services, notify the person of the apparent illegal status, and report the apparent illegal status to the State Director of Social Services, the Attorney General of California and the INS. § 5(c). Section 6(c) contains the same wording with respect to publicly-funded health care. In an attempt to hold as much of the initiative valid as possible, the Court struck the language, "reasonably suspects, based upon the information provided to it." *LULAC*, 908 F.Supp. at 773. It held that this language required a state agent "to

---

15. On August 23, 1996, Attorney General Reno issued an order, pursuant to section 41(c)(2)(B) of the PRA, containing a provisional specification of programs and services for which eligibility is not to be conditioned on immigration status. AG Order No.2049–96, *published at* 61 Fed.Reg. 45985 (Aug. 30, 1996).

16. The PRA provides exceptions for emergency medical services, short-term, non-cash, in-kind emergency disaster relief, assistance with immunizations for immunizable diseases, treatment of symptoms of communicable diseases, and programs specified by the Attorney General after consultation with appropriate federal agencies. 8 U.S.C. § 1621(b).

make independent determinations as to whether a person is deportable under federal law." *Id.* In addition, the Court struck all of the notification and reporting requirements. *Id.* at 786–87.

After excising the portions of Proposition 187 that created the state regulatory scheme, the Court denied plaintiffs' motions for summary judgment with respect to sections 5(a) and 6(a) and portions of sections 5(c) and 6(c). *LULAC,* 908 F.Supp. at 792–93. After severance, the remaining portions of sections 5(a) and 6(a) state that it is the intent of the people of California to deny benefits to people who are not "citizens of the United States and aliens lawfully admitted to the United States." §§ 5(a); 6(a). The remaining portion of Section 5(c) reads: "If any public entity in this state to whom a person has applied for public social services determines that the person is *an alien in the United States in violation of federal law,* the entity shall not provide the person with benefits or services." *LULAC,* 908 F.Supp. at 792 (emphasis added). Similarly, after severance, section 6(c) now reads: "If any publicly-funded health care facility in this state from whom a person seeks health care services other than emergency medical care as required by federal law, determines that the person is *an alien in the United States in violation of federal law,* the facility shall not provide the person with services." *Id.* at 792–93 (emphasis added).

The Court engaged in this exercise of cutting and pasting in response to the arguments of the defendants that at least the provisions denying benefits could be saved by writing curative regulations to bring Proposition 187 in conformity with federal law. The definition of "an alien in the United States in violation of federal law," the verification of status, and the manner in which the denial of services was to be effected were all left to hypothetical regulations to be drafted by the state to bring the initiative into harmony with federal law. As the transcripts of the hearings demonstrate, it was with serious misgivings that the Court accepted the task of rescuing the denial of benefits portions of Proposition 187 by severing them from the reporting, cooperation and notification provi-

sions which are clearly preempted. The Court's doubts were only overcome by the argument that regulations could supply that which would make the initiative legally enforceable. Without regulations, any viability the argument for severance ever had has been destroyed. Accordingly, the Court revisits the issue of severability.

1. Preempted provisions of sections 5 and 6 are not severable from the remaining provisions in sections 5 and 6.

■ A finding that any provision of an initiative is preempted requires the Court to determine whether that provision is severable from the balance of the initiative so that the remainder may take effect. *See Calfarm Ins. Co. v. Deukmejian,* 48 Cal.3d 805, 821, 258 Cal.Rptr. 161, 170, 771 P.2d 1247, 1255 (1989). State law governs the determination of whether the preempted portion is severable from the remaining portion. *National Broiler Council v. Voss,* 44 F.3d 740, 748 n. 12 (9th Cir.1994).

■ Although section 10 of Proposition 187 provides that any invalid portion of the statute is severable if the remaining portion could be given effect, a severability clause is not conclusive. *See Calfarm,* 48 Cal.3d at 821, 258 Cal.Rptr. at 170, 771 P.2d at 1256 (analyzing additional criteria to determine severability). California law prescribes three criteria to determine severability: "the invalid portion must be grammatically, functionally, and volitionally separable." *Id.*

a. Grammatical severability

■ A provision is grammatically severable if "[i]t constitutes a distinct and separate provision ... which can be removed as a whole without affecting the working of any other provision," *Calfarm,* 48 Cal.3d at 822, 258 Cal.Rptr. at 170, 771 P.2d at 1256, or "where the valid and invalid parts can be separated by paragraph, sentence, clause, phrase or even single words." *Santa Barbara Sch. Dist. v. Superior Court of Santa Barbara County,* 13 Cal.3d 315, 330, 118 Cal.Rptr. 637, 645, 530 P.2d 605, 617 (1975).

As discussed in the Court's prior Opinion, the preempted provisions in sections 5 and 6 are grammatically severable from the remaining provisions. The remaining provisions can be made grammatically correct without adding any additional words or punctuation.

b. Functional severability

 Invalid provisions are functionally severable if the remaining provisions can "stand on their own, unaided by the invalid provisions," are capable of "separate enforcement," *People's Advocate, Inc. v. Superior Court*, 181 Cal.App.3d 316, 332, 226 Cal.Rptr. 640, 649 (1986), can be "given effect," *Raven v. Deukmejian*, 52 Cal.3d 336, 355, 276 Cal. Rptr. 326, 338, 801 P.2d 1077, 1089 (1990), or can "operate entirely independently" of the invalid provisions. *Legislature v. Eu*, 54 Cal.3d 492, 535, 286 Cal.Rptr. 283, 310, 816 P.2d 1309, 1336 (1991). The remaining provisions must neither be "rendered vague" by the absence of the invalid provisions nor "inextricably connected to them by policy considerations." *People's Advocate*, 181 Cal. App.3d at 332, 226 Cal.Rptr. at 649.

 The remaining provisions in sections 5(c) and 6(c) require that a public entity or publicly-funded health care facility deny services to any person if that entity or facility "determines that the person is an alien in the United States in violation of federal law." *LULAC*, 908 F.Supp. at 791–92. These remaining provisions, of course, are now silent with respect to the implementation of this requirement. First, sections 5(c) and 6(c) do not indicate which federal law supplies the definition of "an alien in the United States in violation of federal law," whether it be the PRA, INA, or some other federal law. Second, even assuming an adequate definition, sections 5(c) and 6(c) do not state how or by whom the definition should be applied and the determination made. Finally, sections 5(c) and 6(c) do not instruct whether the entity or facility must take affirmative steps to verify the immigration status of persons seeking benefits.

The Court severed the original definitions because they did not conform to federal law, and, in addition, were part of a scheme to regulate an area exclusively reserved to the federal government. Without these definitions, the remaining benefits denial provisions are hopelessly vague, and the Court cannot retrieve the prior definition to make them less so. Standing alone, these provisions are incapable of enforcement. They depend for their efficacy on the rest of the state regulatory scheme laid out in Proposition 187.

Throughout the arguments, the defendants claimed that they could promulgate regulations implementing the benefits denial provisions in sections 5(c) and 6(c), and that these regulations would eliminate the obvious flaws in the initiative, constitutional and otherwise. The Court has now concluded that this cannot be done. Indeed, it probably never could have been done without impermissibly rewriting the whole of Proposition 187.

 Defendants now have shifted ground and contend that regulations are not necessary for this challenge because plaintiffs have mounted a facial challenge to Proposition 187. The defendants rely on the rule that where a statute is challenged on its face, "the challenger must establish that no set of circumstances exists under which the Act would be valid. The fact that [the statute] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render (it) wholly invalid." *Rust v. Sullivan*, 500 U.S. 173, 183, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991) (quoting *U.S. v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)).

The flaw in defendants' argument is that Proposition 187, as drafted, is not constitutional on its face. The benefits denial provisions could *only* be viewed as arguably constitutional if severability is appropriate in the first instance and the Court then rewrites the initiative. Without severance and redrafting, the benefits denial provisions are part of a state regulatory scheme which impermissibly invades a field reserved to the federal government.

 Neither a court nor an executive agency is permitted to revise or rewrite an initiative to force a constitutional interpretation. This rule applies even in the case of a

facial challenge. "The canon of construction that a court should strive to interpret a statute in a way that will avoid an unconstitutional construction ... is 'not a license for the judiciary to rewrite the language enacted by the legislature.'" *Chapman v. United States,* 500 U.S. 453, 464, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991) (quoting *U.S. v. Monsanto,* 491 U.S. 600, 611, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989)). In interpreting a statute, the court is not permitted to rewrite the statute. *Blair v. Pitchess,* 5 Cal.3d 258, 282, 96 Cal.Rptr. 42, 59, 486 P.2d 1242, 1259 (1971); *see also Heckler v. Mathews,* 465 U.S. 728, 741–42, 104 S.Ct. 1387, 79 L.Ed.2d 646 (1984).

■ The executive also may not promulgate regulations that contradict a statute. "[N]o, regulation adopted is valid or effective unless consistent and not in conflict with the statute." Cal. Govt.Code § 11342.2 (1992). Moreover, after the court has stricken provisions of a statute upon which a remaining provision is based, an executive agency is not permitted to promulgate regulations to reconstruct over the stricken provisions. *Long Beach Lesbian & Gay Pride, Inc. v. City of Long Beach,* 14 Cal.App.4th 312, 327, 17 Cal. Rptr.2d 861, 868 (1993) (holding where court struck statute's scheme for issuance of parade permits, agency could not promulgate regulations to rewrite provision that previously relied on issuance of parade permits).

Heretofore, defendants have argued that because the state can promulgate regulations that properly instruct state agents to verify an applicant's immigration status by consulting a federal database, such as SAVE, there is a constitutional manner in which the state can implement the benefits denial provisions of sections 5(c) and 6(c). Accepting this position, the Court stated that to avoid preemption, the regulations would have to require the state agent to verify immigration status by referring to federal determinations. *See, e.g., LULAC,* 908 F.Supp. at 771 n. 10. However, a regulation to this effect would necessarily conflict with the original meaning of sections 5(c) .and 6(c), which relied on the classification scheme in sections 5(b) and 6(b) to determine who is "an alien in violation of federal law." Sections 5(b) and 6(b) did not rely on a federal determination; they relied on a state classification scheme. On reconsideration, it is clear that neither the Court nor the state defendants are permitted to excise sections 5(b) and 6(b)'s regulatory scheme for determining who is "an alien in violation of federal law," in order to replace it with a new scheme tied to federal law.

Defendants concede that regulations to interpret sections 5(c) and 6(c) would replace sections 5(b) and 6(b) with a new scheme. They originally maintained the argument that, "invalidation of the initiative's verification provisions would not compromise the integrity or viability of its denial of benefits provisions, since state agencies could in effect *replace* the present verification provisions by issuing regulations prescribing the verification process." Defs.' Opp. to Motion of Gregorio T. and LULAC for Summ.J. at 20–21 (emphasis added). Defendants appear to have abandoned that position perhaps because it was always incorrect. No regulations could effectively cure the obvious flaws in the benefits denial provisions of sections 5 and 6 without impermissibly rewriting the Proposition and changing its meaning from that which the voters enacted. The preempted provisions of sections 5 and 6 are not functionally severable from the remaining provisions in sections 5(c) and 6(c). Thus, all of sections 5(c) and 6(c) must be stricken along with the rest of the scheme.

·The last remaining provisions in sections 5 and 6 are the statements of intent in sections 5(a) and 6(a). Because a statement of intent is incapable of separate enforcement, the preempted provisions are not functionally severable from sections 5(a) and 6(a). Thus, sections 5 and 6 must be viewed as unenforceable in their entirety.

c. Volitional severability

■ An invalid provision of a statute is volitionally severable from the remaining provisions if the remaining provisions "would likely have been adopted by the people had they foreseen the invalidity" of the challenged provision, or if the provision was not "so critical to the enactment of [the initiative] that the measure would not have been enacted in its absence." *Calfarm Ins. Co. v.*

*Deukmejian,* 48 Cal.3d 805, 822, 258 Cal. Rptr. 161, 170, 771 P.2d 1247, 1256 (1989).

The Court has found all of sections 5 and 6 invalid because the preempted portions of the sections are not functionally severable from the remaining provisions. Thus, the Court need not reach the issue of whether the preempted provisions are volitionally severable.

### C. *Section 3 is Enforceable*

■ On March 3, 1997, defendants moved for partial judgment on the pleadings with respect to sections 2 and 3. The Court granted the motion as to section 2 and denied it with respect to section 3. Section 2 establishes state criminal penalties for the manufacture, distribution, or sale of false documents to conceal the citizenship or alien status of another person. Section 3 penalizes "any person who uses false documents to conceal his or her true citizenship or resident alien status." § 3.

The Court now reconsiders the motion to grant partial judgment on the pleadings with respect to section 3. In the November 20, 1995 Opinion, the Court denied plaintiffs' motion for summary judgment as to section 3, holding that section 3 was not preempted under the three *De Canas* tests. In opposition to the motion for partial judgment on the pleadings, plaintiffs' continued to argue that federal law preempts section 3. The Court is not persuaded. On reconsideration of defendants' motion for partial judgment on the pleadings, the Court has concluded that the motion should have been granted as to section 3.

### D. *Section 1 is Inoperable.*

■ Section 1 is a statement of findings and declarations by the People of California. It declares the Proposition's intent to require cooperation between state and federal government, notification, and denial of benefits and services to illegal aliens. Because the Proposition no longer contains provisions re-

lating to this declaration, section 1 is not separately enforceable. Therefore, section 1 cannot be upheld.

### E. *Section 10 is Enforceable*

■ Section 10 details the process for amendment of the initiative and declares that the provisions of the Proposition are severable. Because sections 2 and 3 are enforceable, section 10 is also enforceable.

### III.

### CONCLUSION

After the Court's November 20, 1995 Opinion, Congress enacted the PRA, a comprehensive statutory scheme regulating alien eligibility for public benefits. The PRA states that it is the immigration policy of the United States to restrict alien access to substantially all public benefits. Further, the PRA ousts state power to legislate in the area of public benefits for aliens. When President Clinton signed the PRA, he effectively ended any further debate about what the states could do in this field. As the Court pointed out in its prior Opinion, California is powerless to enact its own legislative scheme to regulate immigration. It is likewise powerless to enact its own legislative scheme to regulate alien access to public benefits. It can do what the PRA permits, and nothing more. Federal power in these areas was always exclusive and the PRA only serves to reinforce the Court's prior conclusion that substantially all of the provisions of Proposition 187 are preempted under *De Canas v. Bica.*[17] Only sections 2, 3 and 10 are enforceable.

■

---

**17.** A number of other constitutional challenges have been made to Proposition 187. Several of these challenges are sufficiently meritorious to be potentially dispositive of some of the provisions of the initiative which are found to be preempted under the Court's analysis. Since the failure of Proposition 187 under all three of the *De Canas* tests disposes of substantially all of these issues in the consolidated cases, the Court does not find it necessary to resolve these other challenges.