[No. A090898. First Dist., Div. Three. May 29, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
JUAN SALAZAR-MERINO, Defendant and Appellant.

[No. A092314. First Dist., Div. Three. May 29, 2001.]

In re JUAN SALAZAR-MERINO on Habeas Corpus.

**[Opinion certified for partial publication.]***

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part V.

**COUNSEL**

Deborah Wald, under appointment by the Court of Appeal, for Defendant and Appellant.

John T. Philipsborn for California Attorneys for Criminal Justice as Amicus Curiae on behalf of Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Laurence K. Sullivan and Aileen Bunney, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HORNER, J.**\*—Juan Salazar-Merino pled guilty to "using a false document to conceal his . . . true citizenship or resident alien status" in violation of Penal Code section 114, and was sentenced to five years in state prison, with probation denied.[1] Appellant contends on appeal that: (1) his trial counsel rendered ineffective assistance by recommending a guilty plea without advising him of a possible defense to the charge; (2) section 114 is unconstitutional as applied to appellant because it failed to give adequate notice that the conduct in which he engaged violated the statute; (3) the area of conduct covered by section 114 is preempted by federal law; (4) section 114 is unconstitutional because it is not severable from the other provisions of Proposition 187, which were ruled unconstitutional; (5) section 114 violates substantive due process because it is not reasonably related to a proper legislative goal; (6) appellant's sentence to five years in state prison constitutes cruel and unusual punishment; and (7) in denying appellant probation, the trial court failed to exercise its discretion, abused that discretion and/or violated appellant's rights to due process and/or equal protection.[2] In his consolidated petition for writ of habeas corpus, appellant reiterates his first, second and fourth arguments from his direct appeal.

We grant appellant's petition for writ of habeas corpus on the ground that his counsel rendered ineffective assistance by failing to advise him of a potentially meritorious defense in the case. We also address appellant's second, third, fourth and fifth arguments on direct appeal and uphold the constitutionality of section 114 in guidance to the trial court on remand. We do not address the sixth and seventh issues raised on direct appeal, as they are unnecessary to our disposition of the case.

### FACTS AND PROCEDURAL BACKGROUND

By a complaint filed on February 29, 2000, appellant was charged with using a false resident alien identification card to conceal his true citizenship and/or resident alien status in violation of section 114. The charge was based on the following event, as set forth in appellant's probation report: "On February 27, 2000, at approximately 10:00 p.m., Officer Reynolds of the California Highway Patrol conducted a traffic stop on Highway 20 in Nice with a vehicle, which had a defective headlight. The officer contacted the

---

\*Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1]All further statutory references are to the Penal Code.

[2]California Attorneys for Criminal Justice, a nonprofit corporation, has appeared as amicus curiae for appellant and has filed a brief pertaining to the fourth and seventh issues raised on appeal.

driver who presented a Washington I.D. card as identification, identifying him as Roman Cruz. The officer then asked the passenger if he had a driver's license and was handed a Resident Alien I.D. card. The officer inspected this card and observed what he believed to be a false document. The picture was raised and out of place with it covering part of the Seal. The name appearing on the card was Juan Salazar-Merino with this party indicating that was his name. The officer arrested this party for possession of a false Resident Alien I.D. card. [¶] The officer was able to determine after making a phone call to the I.N.S. dispatch center that the Resident Alien card number A086173526, which was in his possession belonged to a Francisco Salazar with a date of birth of 01-20-81. After obtaining fingerprints from the subject in custody it was confirmed that this party was Juan Salazar-Merino . . . ."

On March 3, 2000, appellant entered a not guilty plea and was appointed an attorney to represent him in the matter, which was then continued for a preliminary hearing. On March 17, 2000, prior to the occurrence of the preliminary hearing, appellant changed his plea to guilty as charged. At the plea hearing, the district attorney indicated that appellant was eligible for probation without limitation. The trial court accepted appellant's plea and referred the matter to the probation department for a report and recommendation, with sentencing scheduled for April 14, 2000.

On April 14, 2000, the probation department filed its report, which indicated that, although appellant was statutorily eligible for probation, he "is a poor candidate for probation due to his illegal alien status in the United States. Therefore, probation will not be recommended." That same day, the trial court denied probation and sentenced appellant to a term of five years in state prison. In denying probation, the court stated: "Following the recommendation of the probation officer, probation is denied. [¶] The reasons for the court's denial are that: [¶] The nature, seriousness and circumstances of the crime are considered to be typical. [¶] The defendant does have a prior record of criminal conduct which is not significant, however[,] he does have a case pending in Santa Rosa, which would make probation problematical, in that he may end up in custody on that case. [¶] He does not seem to have a significant prior record of criminal conduct. [¶] The defendant's ability to comply with any reasonable terms and conditions of probation would appear to be non-existent because of his illegal alien status, so he would not be here to perform on probation. [¶] And for that reason alone probation is denied."

Appellant filed a timely notice of appeal on April 17, 2000. On August 29, 2000, appellant filed a petition for writ of habeas corpus, which was consolidated with his appeal on August 31, 2000. Respondent filed an informal opposition to the petition on October 26, 2000. On April 11, 2001,

we issued an order to show cause returnable to this court as to why habeas corpus relief should not be granted on the ineffective assistance of counsel claim. Respondent declined to file a formal response to the petition for writ of habeas corpus and instead opted to rely on its informal opposition. Appellant filed a traverse on May 1, 2000.

## DISCUSSION

### I. *Section 114 Is Not Unconstitutionally Vague.*

 Section 114 was enacted as part of Proposition 187, the stated purpose of which was to "provide for cooperation between [the] agencies of state and local government with the federal government, and to establish a system of required notification by and between such agencies to prevent illegal aliens in the United States from receiving benefits or public services in the State of California." (Ballot Pamp., Gen. Elec. (Nov. 8, 1994) text of Prop. 187, § 1, p. 91.) The subject statute provides in its entirety: "Any person who uses false documents to conceal his or her true citizenship or resident alien status is guilty of a felony, and shall be punished by imprisonment in the state prison for five years or by a fine of twenty-five thousand dollars ($25,000)." (§ 114.) In light of the express purpose behind Proposition 187, appellant contends that section 114 cannot constitutionally be interpreted to apply to any conduct other than attempts *to obtain public benefits* through the use of false immigration documents. Under this interpretation, appellant argues that his conviction violated his due process right to fair warning that his conduct was proscribed by the statute. Respondent contends that the statute provides fair warning that it prohibits the conduct in which appellant engaged, since the criminality of using false documents is well established.

 The goal in interpreting a statute enacted by voter initiative is to determine and effectuate voter intent. (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299]; see also *Woods v. Young* (1991) 53 Cal.3d 315, 323 [279 Cal.Rptr. 613, 807 P.2d 455]; *Davis v. City of Berkeley* (1990) 51 Cal.3d 227, 234 [272 Cal.Rptr. 139, 794 P.2d 897].) To determine that intent, however, we must first look to the *words* of the statute, "giving them their usual and ordinary meaning." (*DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 601 [7 Cal.Rptr.2d 238, 828 P.2d 140]; *Lungren v. Deukmejian, supra,* at p. 735.) Courts may look to extrinsic evidence to construe a statute *only* when the statutory language is susceptible of more than one reasonable interpretation. (*Souza v. Lauppe* (1997) 59 Cal.App.4th 865, 872 [69 Cal.Rptr.2d 494].) "If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to

indicia of the intent of the . . . voters." (*Lungren v. Deukmejian, supra,* at p. 735.)

On its face, section 114 unambiguously prohibits the use of false documents *to conceal one's true citizenship or resident alien status.* Thus, section 114 is a specific intent penal statute, which applies only if a person uses a false document with the specific intent to conceal his or her true citizenship or resident alien status. (*People v. Rizo* (2000) 22 Cal.4th 681, 686-687 [94 Cal.Rptr.2d 375, 996 P.2d 27].) Because the language of the statute is clear and unambiguous, it would be improper for us to refer to extrinsic evidence, such as the purpose behind the voter initiative under which the subject statute was added to the Penal Code, in an attempt to create an ambiguity from which to construe the statute as prohibiting only attempts *to obtain public benefits* through the use of false immigration documents. (See *Hartford Fire Ins. Co. v. Macri* (1992) 4 Cal.4th 318, 326 [14 Cal.Rptr.2d 813, 842 P.2d 112]; *Lungren v. Deukmejian, supra,* 45 Cal.3d at p. 735; *Farnow v. Superior Court* (1990) 226 Cal.App.3d 481, 486 [276 Cal.Rptr. 275] ["a court may not rewrite a law, supply an omission or give words an effect different from the plain and direct import of the terms used"].) The only reasonable interpretation of which the statutory language in section 114 is susceptible is that it prohibits the use of false documents to conceal one's true citizenship or resident alien status, regardless of whether the use includes an attempt to obtain public benefits. (See *Souza v. Lauppe, supra,* 59 Cal.App.4th at p. 872.)

There is simply no basis to conclude that section 114 is unconstitutionally vague. When the statute is interpreted properly in accordance with its plain language, it provides reasonable notice of the conduct it proscribes. If appellant used the false document with the requisite intent to conceal his true citizenship or resident alien status, then the statute provided him fair warning that he was guilty of a felony thereunder.

II. *Section 114 Is Not Preempted by Federal Law.*

Proposition 187 consists of 10 sections. Section 114 was added to the Penal Code under section 3 of the proposition. While the majority of the provisions of Proposition 187 have been determined to be preempted by federal immigration law, section 3 and the statute enacted thereunder have remained enforceable.[3] (See *League of United Latin American Citizens v. Wilson* (C.D.Cal. 1995) 908 F.Supp. 755, 786-787 (*LULAC I*); *League of*

---

[3]Section 113, which prohibits the manufacture or sale of false documents to conceal the true citizenship or resident alien status of another person, was added to the Penal Code under section 2 of Proposition 187. This section also remains enforceable.

United Latin American Citizens v. Wilson (C.D.Cal. 1997) 997 F.Supp. 1244, 1261 (*LULAC II*).) Relying on *De Canas v. Bica* (1976) 424 U.S. 351, 356-357 [96 S.Ct. 933, 937-938, 47 L.Ed.2d 43] (*De Canas*), appellant contends that section 114 should also be deemed preempted by federal law because: (1) it is part of an overall scheme to regulate immigration in the State of California; and (2) it trespasses into an area where federal immigration law occupies the field. Relying on *LULAC I, supra,* at pages 775-776, respondent contends that section 114 is not preempted by federal law because: (1) the statute, in and of itself, does not serve the impermissible goal of ensuring that illegal aliens leave the country; and (2) federal law does not occupy the field of criminal law relating to the use of false documents.

Although the power to regulate immigration is exclusively federal, the fact that a state statute pertains to aliens does not render it per se preempted by federal immigration law. (*De Canas, supra,* 424 U.S. at pp. 354-356 [96 S.Ct. at pp. 936-937].) In *De Canas, supra,* at pages 355-357 [96 S.Ct. at pages 936-938], the United States Supreme Court held that a state statute related to immigration is preempted by federal law if it is a regulation of immigration, which is essentially a "determination of who should or should not be admitted into the country. . . ," or if it attempts to regulate a subject matter with respect to which Congress has intended to completely oust state power. Such a congressional intention to occupy the field of law on a particular subject matter may be inferred where the system of federal regulation is so pervasive that no opportunity for state activity remains. (*Id.* at p. 357 [96 S.Ct. at pp. 937-938].) Appellant contends that section 114 is preempted by federal immigration law because it fails both of the foregoing *De Canas* tests of preemption. We disagree.

One federal court has specifically addressed the arguments raised by appellant and determined that section 114 is not preempted by federal immigration law. (See *LULAC I, supra,* 908 F.Supp. at pp. 775-776; see also *LULAC II, supra,* 997 F.Supp. at p. 1261.) With respect to whether section 114 attempts to regulate immigration, the court in *LULAC I, supra,* at page 775, held that both sections 2 and 3 of Proposition 187, under which sections 113 and 114 were added to the Penal Code, "though they may indirectly affect immigration in some way, . . . can hardly be said to be a 'determination of who should or should not be admitted in to the country.' . . . [¶] . . . Absent the verification, notification and cooperation/reporting elements of the initiative, . . . the criminal penalties do not serve the impermissible goal of ensuring that 'illegal' aliens leave the country. Accordingly, sections 2 and 3 are not preempted under the first *De Canas* test." The *LULAC I* court also held that the criminal provisions set forth in sections 2 and 3 are not

preempted under the second *De Canas* test, stating: "Plaintiffs have made no showing whatsoever that Congress intended to effect a 'complete ouster of state power— including state power to promulgate laws not in conflict with federal laws' with respect to criminalizing the falsification and use of forged identification documents. [Citation.] The field on which sections 2 and 3 touch is not the broad field of immigration regulation but, rather, the field of the criminal law as it relates to false documents. Since nothing in the legislative history of the INA, or in the INA itself, reveals an intent to oust state authority to criminalize the production or use of false identification, sections 2 and 3 are not preempted under the second *De Canas* test. . . ." (*LULAC I, supra,* at p. 776.)

We agree with and adopt the analysis of these issues as set forth by the federal district court in *LULAC I, supra,* 908 F.Supp. at pages 775-776. We are unpersuaded by appellant's contention that "in this regard [*LULAC I* and *LULAC II*] were wrongly decided." We also find *Pennsylvania v. Nelson* (1956) 350 U.S. 497 [76 S.Ct. 477, 100 L.Ed. 640] distinguishable and appellant's reliance thereon misplaced. While the Supreme Court in *Pennsylvania v. Nelson, supra,* at pages 502-509 [76 S.Ct. at pages 480-484], held that the state sedition laws at issue therein were preempted even though they merely supplemented, but did not conflict with federal law, it found preemption only after determining that " '[t]he scheme of federal regulation [of sedition] [is] so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.' " (*Pennsylvania v. Nelson, supra,* at p. 502. [76 S.Ct. at p. 480].) Because there is no similarly pervasive scheme of federal regulation of the production or use of false identification, there is no basis to infer that Congress intended to prevent state action in this field. (*LULAC I, supra,* at p. 776.)

III. *Section 114 Is Severable from the Unconstitutional Portions of Proposition 187.*

As previously mentioned, all provisions of Proposition 187 have been ruled unconstitutional, except sections 2 and 3, under which sections 113 and 114 were added to the Penal Code, and section 10, which states that the proposition's provisions are severable in the event that any portion is deemed invalid. (*LULAC II, supra,* 997 F.Supp. at p. 1261; Ballot Pamp., Gen. Elec., *supra,* text of Prop. 187, §§ 2, 3, & 10, pp. 91-92.) Appellant contends that, despite the severability clause contained in section 10, section 3 of the proposition is not severable from the other provisions because: (1) it was insignificant in light of the stated purpose of the proposition; and (2) the attention of voters was not sufficiently focused on the particular provision. Respondent argues that section 114 is severable because the criminalization

of the manufacture and use of false immigration documents serves a significant part of the purpose behind Proposition 187.

■ If Proposition 187 is not severable, as argued by appellant, " 'then the void part taints the remainder and the whole [including section 3 and section 114 enacted thereunder] becomes a nullity.' " (*Santa Barbara Sch. Dist. v. Superior Court* (1975) 13 Cal.3d 315, 330 [118 Cal.Rptr. 637, 530 P.2d 605].) The severance clause contained in section 10 of Proposition 187 presumptively " 'calls for sustaining the valid part of the enactment,' " but is not conclusive. (*Calfarm Ins. Co. v. Deukmejian* (1989) 48 Cal.3d 805, 821 [258 Cal.Rptr. 161, 771 P.2d 1247].) To be severable, the initiative must also pass a three-part test of grammatical, functional and volitional severability. (*Ibid.*; *Gerken v. Fair Political Practices Com.* (1993) 6 Cal.4th 707, 714 [25 Cal.Rptr.2d 449, 863 P.2d 694].) Appellant concedes the grammatical and functional severability of section 3, but argues against its volitional severability.

In order for a voter initiative to be considered volitionally severable, "the provisions to be severed must be so presented to the electorate in the initiative that their significance may be seen and independently evaluated in the light of the assigned purposes of the enactment." (*People's Advocate, Inc. v. Superior Court* (1986) 181 Cal.App.3d 316, 332-333 [226 Cal.Rptr. 640].) "[I]f a part to be severed reflects a 'substantial' portion of the electorate's purpose, that part can and should be severed and given operative effect." (*Gerken v. Fair Political Practices Com., supra,* 6 Cal.4th at p. 715.) ■ The declaration of intent in the original version of Proposition 187 explicitly states that a substantial purpose of the initiative is to "prevent illegal aliens in the United States from receiving benefits or public services in the State of California." (Ballot Pamp., Gen. Elec., *supra,* text of Prop. 187, § 1, p. 91.) Appellant does not dispute that the criminalization of the use of false immigration documents to conceal one's true citizenship or resident alien status serves a significant part of the initiative's purpose. (See *LULAC I, supra,* 908 F.Supp. at p. 767.) While the full purpose of Proposition 187 could not be realized, we find it "eminently reasonable to suppose that those who favor[ed] the proposition would be happy to achieve at least some substantial portion of their purpose." (*Santa Barbara Sch. Dist. v. Superior Court, supra,* 13 Cal.3d at p. 332.)

Nor are we persuaded by appellant's argument that the electorate's attention was not "sufficiently focused upon the parts to be severed so that it would have separately considered and adopted them in the absence of the invalid portions." (*People's Advocate, Inc. v. Superior Court, supra,* 181 Cal.App.3d at p. 333.) The initiative's declaration of intent was set forth in

section 1 of the proposition. The enactment of sections 113 and 114 was accomplished through the explicit language contained in sections 2 and 3, which were distinct and independent provisions that immediately followed the declaration of intent. There is simply no basis to conclude that sections 2 and 3 were presented to the electorate in the initiative in such a manner that their significance could not be seen and independently evaluated in light of the express purpose of the initiative. (*Ibid.*) Thus, like the federal district court in *LULAC I, supra,* 908 F.Supp. at page 767, we are "convinced that if the voters had known that some of the initiative's provisions would be held invalid, they would have preferred the implementation of the remaining portions, rather than the invalidation of the entire initiative."

IV. *Section 114 Does Not Violate Due Process.*

■ As discussed above, section 114 served a significant part of Proposition 187's stated purpose of "prevent[ing] illegal aliens in the United States from receiving benefits or public services in the State of California." (Ballot Pamp., Gen. Elec., *supra,* text of Prop. 187, § 1, p. 91.) Appellant argues that application of section 114 in this case violated his due process rights because the statute is not reasonably related to the stated goal of Proposition 187 and because that goal is no longer valid in light of the federal preemption of the majority of the initiative. Respondent contends that section 114 is rationally related to the valid goal of proscribing criminal conduct.

Regardless of the validity of the goal underlying Proposition 187, section 114 does not violate due process as long as it is "reasonably related to *a* proper legislative goal." (*Hale v. Morgan* (1978) 22 Cal.3d 388, 398 [149 Cal.Rptr. 375, 584 P.2d 512], italics added; *People v. Flores* (1986) 178 Cal.App.3d 74, 84-85 [223 Cal.Rptr. 465] [applying substantive due process analysis to a voter initiative].) " 'The touchstone of due process is protection of the individual against arbitrary action of government.' " (*People v. Flores, supra,* at p. 84.) Although not explicit in the language of Proposition 187 or of section 114, the subject statute clearly served the valid legislative purpose of preventing and punishing the criminal conduct proscribed therein. Because section 114 is reasonably related to a proper legislative goal, there is no basis to conclude that application of the statute violated appellant's substantive due process rights.

V. *Appellant Was Provided Ineffective Assistance Through His Counsel's Failure to Advise Him of a Potentially Meritorious Defense.* *

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante,* page 590.

## DISPOSITION

The writ of habeas corpus is granted. The judgment is vacated and appellant's guilty plea is set aside. Upon the issuance of the remittitur, the clerk of this court is directed to forward a copy of this opinion to the State Bar pursuant to Business and Professions Code section 6086.7, subdivision (b).

McGuiness, P. J., and Parrilli, J., concurred.