[No. B148802. Second Dist., Div. Two. Sept. 26, 2001.]

LARRY DARNELL WILLIAMS, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

. COUNSEL

Jonathan E. Roberts for Petitioner.

No appearance for Respondent.

Steve Cooley, District Attorney, Brent Riggs and Phyllis C. Asayama, Deputy District Attorneys, for Real Party in Interest.

## OPINION

**NOTT, Acting P. J.**—We find that a conviction under Penal Code section 245, subdivision (a)(1) for an assault with intent to create great bodily injury is not a serious felony within the meaning of Penal Code section 1192.7, subdivision (c)(31), when it is not an "assault with a deadly weapon, firearm, machinegun, assault weapon, or semiautomatic firearm or assault on a peace officer or firefighter." Accordingly, we grant the petition for writ of mandate.

### INTRODUCTION

The "Three Strikes and You're Out" law (Pen. Code, § 667, subds. (b)-(i)),[1] requires that a defendant who is convicted of a felony and who has two prior convictions for a "strike," (i.e., a "violent felony" under § 667.5 and/or a "serious felony" under § 1192.7, subd. (c)), be sentenced to an indeterminate term of life imprisonment, with a specified minimum term. (§ 667, subds. (e)(2)(A), (i).) Section 1170.12, subdivision (b)(1), reiterates that any offense listed in section 1192.7, subdivision (c), constitutes a serious felony for sentencing purposes.

This case presents the question whether violation of section 245, subdivision (a)(1), assault with intent to create great bodily injury, or "aggravated assault," which is not a violent felony under section 667.5,[2] qualifies as a prior serious felony under section 1192.7, subdivision (c)(31). To determine the question, we construe sections 7.5 and 1192.7, subdivision (c)(31).

Section 1192.7, subdivision (c), amended by initiative (Prop. 21, the Gang Violence and Juvenile Crime Prevention Act of 1998, § 17 (Proposition 21)), effective March 8, 2000, lists in its subparts crimes constituting serious felonies. Section 1192.7, subdivision (c)(31) provides that an "assault with a deadly weapon, firearm, machinegun, assault weapon, or semiautomatic firearm or assault on a peace officer or firefighter, in violation of Section 245" is a serious felony.

The strike in question occurred in 1999. Petitioner was convicted in that year of violation of section 245, subdivision (a)(1), which states that: "Any person who commits an assault upon the person of another with a deadly

---

[1] All further references will be to the Penal Code unless otherwise indicated.

[2] Petitioner erroneously characterizes a conviction for violation of section 245, subdivision (a)(1) as a "simple assault." A violation of section 240, "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another," is a simple assault. The additional element of "use of force likely to create great bodily injury" under section 245, subdivision (a)(1) defines the felony of aggravated assault.

weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury shall be punished by imprisonment in the state prison . . . ." The conviction was the result of a no contest plea, and the crime was one in which petitioner struck the victim with his fist. No great bodily injury was inflicted.[3]

On November 29, 2000, a felony information in the present case was filed against petitioner that included a charge, under sections 1170.12, subdivisions (a) through (d), and section 667, subdivisions (b) through (i) that his 1999 section 245, subdivision (a)(1) conviction, along with another conviction not relevant here, was a prior serious or violent felony.

Petitioner filed a motion to strike the allegation that his section 245, subdivision (a)(1) conviction constituted a serious felony, contending that the language of section 1192.7, subdivision (c)(31) excluded a section 245 conviction when the assault was against neither a firefighter nor peace officer, no deadly weapon, firearm, machine gun, assault weapon, or semi-automatic firearm was used, and great bodily injury was not inflicted. The People opposed the motion, contending that section 7.5 governed construction of Penal Code statutes which cross-referenced other sections by both descriptive language and section number, and that section 7.5 required that section 1192.7, subdivision (c)(31) be construed to include convictions for all violations of section 245. A subsequent motion to strike was made and denied.

Following denial of petitioner's second motion to strike, he filed a petition for writ of mandate; we issued an order to show cause and set the matter for hearing.

## I. FACTUAL AND PROCEDURAL SUMMARY

Petitioner Larry Darnell Williams is charged in an information with several felonies, among them violations of section 12021, subdivision (a)(1), possession of a firearm by a felon; section 236, false imprisonment; and section 12022, subdivision (a)(2), being armed with a handgun during the commission of an offense. The charging information alleges that petitioner had two prior strike convictions within the meaning of section 1170.12, subdivisions (a) through (d), and section 667, subdivisions (b) through (i), one of which was a 1999 violation of section 245, subdivision (a)(1).

On January 23, 2001, petitioner filed a motion to strike the alleged section 245, subdivision (a)(1) strike. The motion was denied, as was a motion for

---

[3]Section 1192.7, subdivision (c)(8), not at issue in this case, provides that any felony in which the defendant personally inflicts great bodily injury on a person is a "serious felony."

reconsideration. On February 21, 2001, following a mistrial, petitioner filed another motion to strike the section 245, subdivision (a)(1) alleged strike. After that motion was denied, petitioner filed a petition for writ of mandate. We issued an order to show cause and requested briefing.

At issue is the construction of section 7.5, governing statutory construction of penal statutes, and construction of section 1192.7, subdivision (c), which defines a serious felony.

## II. CONTROLLING STATUTES

*Section 7.5*

Section 7.5, enacted in 1998, provides: "Whenever any offense is described in this code, the Uniform Controlled Substances Act (Division 10 (commencing with Section 11000) of the Health and Safety Code), or the Welfare and Institutions Code, as criminal conduct and as a violation of a specified code section or a particular provision of a code section, in the case of any ambiguity or conflict in interpretation, the code section or particular provision of the code section shall take precedence over the descriptive language. The descriptive language shall be deemed as being offered only for ease of reference unless it is otherwise clearly apparent from the context that the descriptive language is intended to narrow the application of the referenced code section . . . ."

*Section 1192.7, subdivision (c)(31)*

Section 1192.7, subdivision (c) states, in pertinent part: "(c) As used in this section, 'serious felony' means any of the following: [¶] . . . (31) assault with a deadly weapon, firearm, machinegun, assault weapon, or semiautomatic firearm or assault on a peace officer or firefighter, in violation of Section 245."

The cited language of section 1192.7, subdivision (c)(31) includes all the assaults in section 245, with the exception of an assault on a civilian by means of force likely to produce great bodily injury, without the use of a deadly weapon.[4] Section 1192.7, subdivision (c)(31) was enacted as an amendment by initiative (Prop. 21, § 17), and became effective March 8,

---

[4]Section 245 provides:

"(a)(1) Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury shall be punished by imprisonment in the state prison for two, three, or four

2000. Prior to March 8, 2000, subdivision (c)(31) had read: "[a]ssault with a deadly weapon or instrument on a firefighter."

Proposition 21 amended the section 1192.7, subdivision (c), listing of crimes constituting a serious felony, by enacting the following:[5] "(28) any felony offense, which would also constitute a felony violation of Section 186.22 [a crime committed for the benefit of a street gang]; (29) assault with the intent to commit mayhem, rape, sodomy, or oral copulation, in violation of Section 220; (30) throwing acid or flammable substances, in violation of

---

years, or in a county jail for not exceeding one year, or by a fine not exceeding ten thousand dollars ($10,000), or by both the fine and imprisonment.

"(2) Any person who commits an assault upon the person of another with a firearm shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not less than six months and not exceeding one year, or by both a fine not exceeding ten thousand dollars ($10,000) and imprisonment.

"(3) Any person who commits an assault upon the person of another with a machinegun, as defined in Section 12200, or an assault weapon, as defined in Section 12276 or 12276.1, shall be punished by imprisonment in the state prison for 4, 8, or 12 years.

"(b) Any person who commits an assault upon the person of another with a semiautomatic firearm shall be punished by imprisonment in the state prison for three, six, or nine years.

"(c) Any person who commits an assault with a deadly weapon or instrument, other than a firearm, or by any means likely to produce great bodily injury upon the person of a peace officer or firefighter, and who knows or reasonably should know that the victim is a peace officer or firefighter engaged in the performance of his or her duties, when the peace officer or firefighter is engaged in the performance of his or her duties, shall be punished by imprisonment in the state prison for three, four, or five years.

"(d)(1) Any person who commits an assault with a firearm upon the person of a peace officer or firefighter, and who knows or reasonably should know that the victim is a peace officer or firefighter engaged in the performance of his or her duties, when the peace officer or firefighter is engaged in the performance of his or her duties, shall be punished by imprisonment in the state prison for four, six, or eight years.

"(2) Any person who commits an assault upon the person of a peace officer or firefighter with a semiautomatic firearm and who knows or reasonably should know that the victim is a peace officer or firefighter engaged in the performance of his or her duties, when the peace officer or firefighter is engaged in the performance of his or her duties, shall be punished by imprisonment in the state prison for five, seven, or nine years.

"(3) Any person who commits an assault with a machinegun, as defined in Section 12200, or an assault weapon, as defined in Section 12276 or 12276.1, upon the person of a peace officer or firefighter, and who knows or reasonably should know that the victim is a peace officer or firefighter engaged in the performance of his or her duties, shall be punished by imprisonment in the state prison for 6, 9, or 12 years.

"(e) When a person is convicted of a violation of this section in a case involving use of a deadly weapon or instrument or firearm, and the weapon or instrument or firearm is owned by that person, the court shall order that the weapon or instrument or firearm be deemed a nuisance, and it shall be confiscated and disposed of in the manner provided by Section 12028.

"(f) As used in this section, 'peace officer' refers to any person designated as a peace officer in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2."

[5]Some additional amendments were also made to other subparts of section 1192.7, subdivision (c).

Section 244; (31) *assault with a deadly weapon, firearm, machinegun, assault weapon, or semiautomatic firearm or assault on a peace officer or firefighter, in violation of Section 245*; (32) assault with a deadly weapon against a public transit employee, custodial officer, or school employee, in violation of Sections 245.2, 245.3, or 245.5; (33) discharge of a firearm at an inhabited dwelling, vehicle, or aircraft, in violation of Section 246; (34) commission of rape or penetration by a foreign object in concert with another person, in violation of Section 246.1; (35) continuous sexual abuse of a child, in violation of Section 288.5; (36) shooting from a vehicle, in violation of subdivision (c) or (d) of Section 12034; (37) intimidation of victims or witnesses, in violation of Section 136.1; (38) terrorist threats, in violation [of] Section 422; (39) any attempt to commit a crime listed in this subdivision other than an assault; (40) any violation of Section 12022.53 [use of a firearm in specified felonies]." (Italics added.)

## III. CONTENTIONS OF THE PARTIES

Petitioner contends that section 7.5 controls the construction of a Penal Code provision that contains both descriptive language and a numerically referenced code section only when an ambiguity or conflict in interpretation exists between the descriptive language and the referenced section. He maintains that section 1192.7, subdivision (c)(31), which provides that a serious felony means "assault with a deadly weapon, firearm, machinegun, assault weapon, or semiautomatic firearm or assault on a peace officer, or firefighter, in violation of Section 245," (1) is unambiguous; (2) lists qualifying elements beyond the elements of a simple assault which, if proven, elevate an assault to a serious felony, thus narrowing application of section 245; and (3) clearly excludes conviction of violation of section 245, subdivision (a)(1). Petitioner also asserts that if section 1192.7, subdivision (c)(31) is ambiguous, and if a violation of section 245, subdivision (a)(1) is rendered a serious felony by application of section 7.5, then section 7.5 is unconstitutional as applied.

Real party in interest maintains that: (1) an ambiguity or conflict in interpretation is not a precondition to applying the requirement of section 7.5 that a numerically cross-referenced code section control over descriptive language; and (2) whenever a Penal Code section references another section by both descriptive language and a section number, and the descriptive language differs from the provisions of the referenced section, an ambiguity is created that requires application of section 7.5. Because the descriptive language of section 1192.7, subdivision (c)(31) references section 245, but does not explicitly include all the offenses included in section 245, real party maintains that section 7.5 must be applied to interpret section 1192.7,

subdivision (c)(31). That application, according to real party, requires that the section 1192.7, subdivision (c)(31), reference to section 245 take precedence over the descriptive language of section 1192.7, subdivision (c)(31), thereby incorporating any and all violations of section 245.

Real party in interest also asserts that the legislative history of Senate Bill No. 2061 (1997-1998 Reg. Sess.), which enacted section 7.5, demonstrates that the Legislature intended section 7.5 to provide that when a verbal description of an offense and a numerically referenced code section were both contained in a penal statute, the definition in the referenced section would control over the description, absent a clear intent to the contrary. Section 1192.7, subdivision (c)(31), real party contends, does not demonstrate the required clear intent that its descriptive language limit the provisions of section 245.

## IV. DISCUSSION

■ The issues of statutory construction presented here are legal questions that we review de novo. (*Heavenly Valley v. El Dorado County Bd. of Equalization* (2000) 84 Cal.App.4th 1323, 1334 [101 Cal.Rptr.2d 591].)

*Section 7.5*

■ The goal of statutory construction is to ascertain and effectuate the intent of the Legislature. (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 871 [39 Cal.Rptr.2d 824, 891 P.2d 804].) " 'To determine legislative intent, a court begins with the words of a statute, because they generally provide the most reliable indicator of legislative intent.' [Citation.] If it is clear and unambiguous our inquiry ends. There is no need for judicial construction and a court may not indulge in it. [Citation.] 'If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs.' " (*Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1047 [80 Cal.Rptr.2d 828, 968 P.2d 539].) We must give the language its usual, ordinary meaning, avoid construing words as surplusage, and interpret the words of a statute in context, internally harmonizing them. (*Dyna-Med Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387-1388 [241 Cal.Rptr. 67, 743 P.2d 1323].)

As set forth above, section 7.5 provides that: (1) whenever any offense is described in the Penal Code as criminal conduct and as a violation of a specified code section or a particular provision of a code section, in the case of any ambiguity or conflict in interpretation, the code section or particular provision of the code section shall take precedence over the descriptive

language; and (2) the descriptive language shall be deemed as being offered only for the ease of reference unless it is otherwise clearly apparent from the context that the descriptive language is intended to narrow the application of the referenced code section or particular provision of the code section.

 By its express terms, section 7.5 requires, "in the case of any ambiguity or conflict in interpretation," that a code section take precedence over descriptive language referencing the same section whenever any offense is described as criminal conduct and as a violation of a specified code section. The second sentence of section 7.5, that: "The descriptive language shall be deemed as being offered only for the ease of reference unless it is otherwise clearly apparent from the context that the descriptive language is intended to narrow the application of the referenced code section" elaborates, but neither supplants nor conflicts, with the first sentence of section 7.5. Absent an ambiguity or conflict of interpretation, the provisions of the second sentence of section 7.5—that "[t]he descriptive language shall be deemed as being offered only for ease of reference unless it is otherwise clearly apparent from the context that the descriptive language is intended to narrow the application of the referenced code section"—is not reached.

Because section 7.5 is unambiguous on its face, we need not resort to legislative history to construe it. (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299]; *Pandazos v. Superior Court* (1997) 60 Cal.App.4th 324, 326 [70 Cal.Rptr.2d 669].)[6] Although we look to a variety of extrinsic aids, among them legislative history, whenever a statute is susceptible of more than one interpretation (*Granberry v. Islay Investments* (1995) 9 Cal.4th 738, 744 [38 Cal.Rptr.2d 650, 889 P.2d 970]), we do not consult extrinsic sources when the language of a statute is unambiguous. Such is the case here.

---

[6]Real party in interest filed, without a request for judicial notice, reports of the Senate Committee on Public Safety, Senate Rules Committee, and the Assembly Committee on Public Safety, as well as an unidentified document that appears to be a summary by a proponent of Senate Bill No. 1455 (1997-1998 Reg. Sess.). Had reference to legislative history been appropriate to construe an ambiguous statute, we would have considered the committee reports, but not the accompanying document, as legitimate indicia of legislative intent. (*Hutnick v. United States Fidelity & Guaranty Co.* (1988) 47 Cal.3d 456, 465, fn. 7 [253 Cal.Rptr. 236, 763 P.2d 1326].) Although the committee reports contain some language indicating that Senate Bill No. 1455 was intended to provide that whenever a code section contains both a numeric reference and descriptive language, the language of the referenced section controls absent a clear intent otherwise, other language in the committee reports, stating the bill's actual provisions, states that it is in the event of an ambiguity or conflict between descriptive language and the provisions of a numerically referenced section, that the language of the referenced section controls. (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 2061 (1997-1998 Reg. Sess.) May 5, 1998; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 2061 (1997-1998 Reg. Sess.); Assem. Com. on Public Safety, Analysis of Sen. Bill No. 2061 (1997-1998 Reg. Sess.) June 23, 1998.)

█ " 'Where the statute is clear, courts will not "interpret away clear language in favor of an ambiguity that does not exist." [Citation.]' [Citation.]" (*Lennane v. Franchise Tax Bd.* (1994) 9 Cal.4th 263, 268 [36 Cal.Rptr.2d 563, 885 P.2d 976].) We are aware that a statutory ambiguity cannot always be decided from the face of a statute, and a " 'latent ambiguity is said to exist, where the language employed is clear and intelligible and suggests a single meaning, but some extrinsic evidence creates a *necessity* for interpretation or a choice among two or more *possible meanings*.' " (*Mosk v. Superior Court* (1979) 25 Cal.3d 474, 495, fn. 18 [159 Cal.Rptr. 494, 601 P.2d 1030].) █ Real party in interest however, does not contend that section 7.5 is latently ambiguous. Instead, real party maintains that because the descriptive language in section 1192.7, subdivision (c)(31) differs from section 245 (by omitting the crime at issue here), an ambiguity is created which, under section 7.5, requires that section 245, in its entirety, be incorporated by reference and control over the descriptive language of section 1192.7, subdivision (c)(31) referencing it. We do not find this argument to be persuasive.

We read section 7.5 according to its plain meaning, and do not construe section 7.5 as applying to every instance in which a Penal Code section references another by both descriptive language and section number. In the absence of any ambiguity or conflict in interpretation between the descriptive language and the referenced code section, no necessity arises for determining whether the descriptive language or the statutory provisions controls, and by its own terms section 7.5 is inapplicable. When an ambiguity or conflict does arise, section 7.5 controls resolution of the ambiguity or conflict, requiring that the provisions of the referenced section control, unless it is contextually clearly apparent that the descriptive language is intended to narrow application of the referenced code section, in which case the descriptive language controls.

*Section 1192.7, subdivision (c)(31)*

Thus, our next inquiry is whether section 1192.7, subdivision (c)(31) is ambiguous or presents a conflict in interpretation, so as to trigger application of section 7.5.

█ The rules of construction of initiative enactments are the same as those for legislative enactments. The goal in interpreting a statute enacted by voter initiative is to determine and effectuate voter intent. (*Lungren v. Deukmejian, supra,* 45 Cal.3d at p. 735; see also *Woods v. Young* (1991) 53 Cal.3d 315, 323 [279 Cal.Rptr. 613, 807 P.2d 455]; *Davis v. City of Berkeley* (1990) 51 Cal.3d 227, 234 [272 Cal.Rptr. 139, 794 P.2d 897].) To determine

intent, we first look to the words of the statute, giving them their usual and ordinary meaning. (*DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 601 [7 Cal.Rptr.2d 238, 828 P.2d 140]; *Lungren v. Deukmejian, supra,* 45 Cal.3d at p. 735.) Courts may look to extrinsic evidence to construe a statute only when the statutory language is susceptible of more than one reasonable interpretation. (*Souza v. Lauppe* (1997) 59 Cal.App.4th 865, 872 [69 Cal.Rptr.2d 494].) If the statutory language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the voters. (*People v. Salazar-Merino* (2001) 89 Cal.App.4th 590, 596 [107 Cal.Rptr.2d 313].) When interpreting statutory language, courts may neither insert language that has been omitted, nor ignore language that has been inserted. (*People v. Frontier Pacific Ins. Co.* (1998) 63 Cal.App.4th 889, 892 [74 Cal.Rptr.2d 316].)

Following the precepts stated above, we look first to the plain language of section 1192.7, subdivision (c)(31): "assault with a deadly weapon, firearm, machinegun, assault weapon, or semiautomatic firearm or assault on a peace officer or firefighter, in violation of Section 245." This language is clear. Moreover, section 1192.7, subdivision (c)(40), enacted simultaneously with section 1192.7, subdivision (c)(31), declares "*any* violation of Section 12022.53" to be a serious felony. (Italics added.) Sections 12022.53 and 245 each list a variety of crimes. While section 1192.7, subdivision (c)(40) unambiguously defines any of the crimes contained in section 12022.53 as a serious felony, in contrast, subdivision (c)(31) eschews language including *any* violation of section 245 as a serious felony, and instead lists *some* of the listed crimes, thereby excluding others. From section 1192.7, subdivision (c)(40), it can be therefore be inferred that the absence of similar language in section 1192.7, subdivision (c)(31), declaring any violation of section 245 to be a serious felony, demonstrates an intention not to incorporate section 245 in its entirety.

Nor do we draw any contrary inferences from the fact that at the same time that section 1192.7, subdivision (c)(31) was enacted, "terrorist threats, in violation [of] Section 422,"[7] was added to the section 1192.7, subdivision (c) listing of crimes constituting a serious felony. (§ 1192.7, subd. (c)(38).) Because of the variety of circumstances under which a conviction for assault under section 245, subdivision (a)(1) may arise, we perceive no inherent illogic in including as a serious felony the crime of threatening great bodily

---

[7] Section 422 provides: "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement . . . causes that person reasonably to be in sustained fear for his or her safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison. . . ."

injury while excluding an assault likely, but failing, to inflict great bodily injury. We are similarly unpersuaded by the similarities real party points out between language contained in the Proposition 21 amendments to section 1192.7, subdivision (c), and descriptive code section titles used by publisher Matthew Bender. ■ Even if we were persuaded, this court has no power to rewrite a statute to make it conform to an unexpressed but presumed intention. " '[T]he judicial role in a democratic society is fundamentally to interpret laws, not to write them. The latter power belongs primarily to the [P]eople and the political branches of government . . . .' [Citation.] . . . 'This court has no power to rewrite the statute so as to make it conform to a presumed intention which is not expressed.' [Citations.]" (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 633 [59 Cal.Rptr.2d 671, 927 P.2d 1175].)

■ Real party in interest correctly points out that it is generally presumed that both the Legislature and the electorate by the initiative process are deemed to be aware of laws in effect at the time they enact new laws and have enacted the new laws in light of existing laws having direct bearing upon them (*McLaughlin v. State Bd. of Education* (1999) 75 Cal.App.4th 196, 212 [89 Cal.Rptr.2d 295]). ■ It does not follow, however, that the electorate enacted section 1192.7, subdivision (c)(31) with the expectation that section 7.5 would be applied to it in the manner that real party suggests. It is unreasonable to infer that an initiative voter would understand "assault with a deadly weapon, firearm, machinegun, assault weapon, or semiautomatic firearm or assault on a peace officer or firefighter, in violation of Section 245" to mean, as real party contends that it does, "any violation of Section 245," particularly when the same initiative contains "any violation" language with respect to other crimes.

In light of our decision, as it is unnecessary to reach the issue of the constitutionality of section 7.5.

## V. DISPOSITION

The petition is granted, the order to show cause is discharged and the stay is dissolved.

Cooper, J., and Todd, J., concurred.