EDMUND G. BROWN JR. Attorney General MARC J. NOLAN Deputy Attorney General
THE CALIFORNIA COMMISSION ON THE STATUS OF WOMEN has requested an opinion on the following question:
May the Attorney General require local law enforcement agencies to prepare and submit (1) a monthly summary report of anti-reproductive-rights crimes reported to them and (2) an individual incident report of every anti-reproductive-rights crime reported to them?
 CONCLUSION
The Attorney General may require local law enforcement agencies to prepare and submit (1) a monthly summary report of anti-reproductive-rights crimes reported to them and (2) an individual incident report of every anti-reproductive-rights crime reported to them. *Page 2 
 ANALYSIS
The California Commission on the Status of Women (Commission) is a nonpartison state agency whose mission is to promote equality and justice for women and girls in California. Among its top policy priorities are improving access to health care and ensuring reproductive justice for women and girls.[1] The Commission has found that the number of anti-reproductive-rights crime has been understated by California law enforcement agencies in the past.[2] Under-reporting of these crimes can make it more difficult to implement measures to reduce them. In the interest of furthering its policy objectives, therefore, the Commission has asked us to issue a legal opinion as to whether existing statutory provisions authorize the Attorney General torequire local law enforcement agencies to submit incident-by-incident reports as well as monthly summary reports of all anti-reproductive-rights crimes reported to them. We conclude that existing law does give the Attorney General that authority.
These questions involve two closely related statutory schemes that were enacted in 2001: the California Freedom of Access to Clinic and Church Entrances Act[3] (also called the California FACE Act), [4]
and the Reproductive Rights Law Enforcement Act (here called the Enforcement Act).[5] The Enforcement Act defines "anti-reproductive-rights crime" as crime committed "partly or wholly because the victim is a reproductive health services[6] client, provider, or assistant, or a crime that is partly or wholly intended *Page 3 
to intimidate the victim, any other person or entity, or any class of persons or entities from becoming or remaining a reproductive health services client, provider, or assistant."[7] The term "anti-reproductive-rights crime" also includes violations of California FACE Act provisions that criminalize the harassment of those working in or wishing to use a reproductive health services facility.[8]
The Enforcement Act, specifically Penal Code section 13777, requires the Attorney General to collect, analyze, and report on certain data pertaining to anti-reproductive-rights *Page 4 
crime. To quote the statute, the Attorney General "shall . . . [c]ollect and analyze information relating to anti-reproductive-rights crimes, including, but not limited to, the threatened commission of these crimes and persons suspected of committing these crimes or making these threats."[9] The Attorney General's analysis "shall distinguish between" violent and nonviolent crimes, and the Attorney General "shall make this information available to federal, state, and local law enforcement agencies and prosecutors in California."[10] Further, the Attorney General "shall . . . [d]irect local law enforcement agencies to report to the Department of Justice, in a manner that the Attorney General prescribes, any information that may be required relative to anti-reproductive-rights crimes," including the code, section, and subdivision number of the pertinent statute.[11]
Where, as here, we are called upon to interpret the meaning or coverage of a statute, our primary task is to determine the Legislature's intent.[12] In doing so, we "look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose."[13] If there is no ambiguity in the statute's text, "we may presume that the Legislature meant what it said and the statute's plain language governs."[14] In fact, if the statutory language is clear and unambiguous, further construction or interpretation is generally both unnecessary and inappropriate.[15] In this instance, we find the critical statutory language to be clear and unambiguous, and we see no reason to deviate from the plain meaning of that language. Penal Code § 13777(a)(1). *Page 5 
First, we see that the statute imposes mandatory duties upon the Attorney General. In the words of the statute, the Attorney General "shall" collect and analyze the data in question and, to effectuate this directive, the Attorney General "shall" direct local law enforcement agencies to provide such data. It is well established that the word "shall" ordinarily connotes a mandatory duty, that the word "may" ordinarily connotes a permissible option, and that this distinction is particularly valid where both terms are used in the same statute.[16]
In this case, we observe that Penal Code section 13777, as enacted, contained both terms, with the latter term "may" used in subdivision (c) of the statute, where the Attorney General was given the option to submit the required reports "electronically or as a part of any other reports that he or she submits to the Legislature . . ." Thus, the Legislature set forth explicitly, within the same statute, where the Attorney General has an option and where he or she has a mandatory duty, such as the duty to collect and analyze anti-reproductive-rights crime data.[17] Furthermore, while the word "shall" might be interpreted as permissive rather than mandatory in some special circumstances, that construction is not available when, as here, it would render a statutory command ineffective or meaningless.[18] In our view, that would be the case if the Attorney General had the option of not fulfilling the data collection, analysis, and reporting duties set forth in section 13777.
Having established that the statute imposes mandatory duties upon the Attorney General to collect and analyze certain data, and to direct local agencies to provide that data, we may now address the precise question of whether the statute gives the Attorney General the authority, in turn, to impose a mandatory duty upon local agencies to submit monthly summary reports and individual incident reports of all anti-reproductive-rights *Page 6 
crimes reported to them. The key statutory phrase is contained in Penal Code section 13777(a)(2), which requires the Attorney General to "[d]irect local law enforcement agencies to report to the Department of Justice, in a manner that the Attorney General prescribes, any information that may be required relative to anti-reproductive-rights crimes. . . ."[19]
The verb "direct" has many meanings — including, for example, to administer, guide, channel, or focus — but, given how and where the term is used in the statute that concerns us, we find that its most applicable definition is "to give authoritative instructions to; command; order or ordain."[20] This meaning becomes all the more apparent from the Legislature's use of "direct" in conjunction with the phrase, "in a manner that the Attorney General prescribes." The term "prescribe," when used in a non-medical sense, means "to lay down, in writing or otherwise, as a rule or a course of action to be followed; appoint, ordain, or enjoin," or "to lay down rules; direct; dictate."[21] In this case, the Attorney General has directed agencies to provide information about anti-reproductive-rights crimes in the form of both case-by-case and monthly reports."[22] We have no reason to doubt that this prescription falls well within the reasonable scope of the Attorney General's authority.
Further, although the plain meaning of the cited language makes it unnecessary to delve into the statute's legislative history in an attempt to interpret it, we have nonetheless reviewed that history and found nothing that would contradict our conclusion concerning the Legislature's intent.[23] Moreover, to interpret the statute against its plain meaning and conclude that the Attorney General doesnot have the authority to require *Page 7 
local law enforcement to provide the relevant information would frustrate both the Attorney General's ability to perform his duties to collect, analyze, and report the information and the Legislature's ability to acquire and use the information. In interpreting statutes, our purpose is always to reach "`a reasonable and commonsense interpretation consistent with the apparent purpose and intention of the lawmakers, practical rather than technical in nature, which upon application will result in wise policy rather than mischief or absurdity.'"[24] We therefore reject the idea that the Legislature would intentionally impose duties on the Attorney General while at the same time depriving him or her of the ability to best carry them out and, as a result, deprive itself of the most accurate and complete information that the Attorney General could provide.
We therefore conclude that the Attorney General may require local law enforcement agencies to prepare and submit (1) a monthly summary report of anti-reproductive-rights crimes reported to them and (2) an individual incident report of every anti-reproductive-rights crime reported to them.
[1] See http://www.women.ca.gov.
[2] Id.
[3] Penal Code §§ 423-423.6 (2001 Cal. Stat. ch. 899 § 2 (SB 780)). Although this legislation was scheduled to be repealed on January 1, 2009, it has been extended, with modifications not pertinent to the present analysis, to January 1, 2014. See Penal Code § 13779 (2008 Cal. Stat. ch. 206 (SB 1770)).
[4] Penal Code § 423.
[5] Penal Code §§ 13775-13779 (2001 Cal. Stat. ch. 899 § 3 (SB 780)).
[6] For purposes of the statutes discussed in this opinion, "reproductive health services" means those services that are "provided in a hospital, clinic, physician's office, or other facility and includes medical, surgical, counseling, or referral services relating to the human reproductive system, including services relating to pregnancy or the termination of a pregnancy." Penal Code §§ 423.1(f),13776(c).
[7] Penal Code § 13776(a).
[8] The elements of these offenses are set forth in Penal Code section 423.2, as follows:
 Every person who, except a parent or guardian acting towards his or her minor child or ward, commits any of the following acts shall be subject to the punishment specified in Section 423.3:
 (a) By force, threat of force, or physical obstruction that is a crime of violence, intentionally injures, intimidates, interferes with, or attempts to injure, intimidate, or interfere with, any person or entity because that person or entity is a reproductive health services client, provider, or assistant, or in order to intimidate any person or entity, or any class of persons or entities, from becoming or remaining a reproductive health services client, provider, or assistant.
 . . . (c) By nonviolent physical obstruction, intentionally injures, intimidates, or interferes with, or attempts to injure, intimidate, or interfere with, any person or entity because that person or entity is a reproductive health services client, provider, or assistant, or in order to intimidate any person or entity, or any class of persons or entities, from becoming or remaining a reproductive health services client, provider, or assistant.
A first conviction for the offense described in section 423.2(a) is punishable by up to one year in the county jail and a $25,000 fine, and a first conviction for the offense described in section 423.2(c) is punishable by up to six months in the county jail and a $2,000 fine. Penal Code § 423.3. Second and subsequent convictions for either offense expose the offender to additional jail terms and increased monetary penalties. Id.
[9] Penal Code § 13777(a)(1).
[10] Id.
[11] Id. at § 13777(a)(2). Using this information, the Attorney General's Criminal Justice Statistics Center publishes an annual report entitled "Anti-Reproductive-Rights Crimes in California." Reports are available online at http://www.ag.ca.gov/cjsc.
[12] Freedom Newsps., Inc. v. Orange Co. Employees Ret. Sys., 6 Cal. 4th 821, 826 (1993).
[13] Dyna-Med, Inc. v. Fair Empl. Hous. Commn., 43 Cal. 3d 1379,1386-1387 (1987).
[14] People v. Snook, 16 Cal. 4th 1210, 1215 (1997).
[15] Diamond Multimedia Sys., Inc. v. Super. Ct., 19 Cal. 4th 1036,1047 (1999); Williams. v. Super. Ct., 92 Cal. App. 4th 612, 620-621
(2001).
[16] Common Cause v. Bd. of Supervisors, 49 Cal. 3d 432, 443 (1989);see People v. Heisler, 192 Cal. App. 3d 504, 506-507 (1987); Hogya v.Super. Ct., 75 Cal. App. 3d 122, 133 n. 8 (1977); Cannizzo v. GuaranteeIns. Co., 245 Cal. App. 2d 70, 73 (1966).
[17] The provision regarding the manner or format in which the Attorney General may choose to submit the relevant information to the Legislature does not appear in the amendment of Penal Code section 13777, effective January 1, 2009. See 2008 Cal. Stat. ch. 206 (SB 1770);see n. 3, supra. Nonetheless, we believe that the inclusion of that provision in the earlier version of the statute demonstrates that the Legislature did intend to distinguish between a permissible option and a mandatory duty. We do not believe that the mandatory duties set forth elsewhere in the statute are rendered any less mandatory by the recent deletion of the provision in question.
[18] People v. Heisler, 192 Cal. App. 3d at 506-507; Governing Bd. v.Felt, 55 Cal. App. 3d 156, 161-163 (1976); People v. Mun. Ct.,145 Cal. App. 2d 767, 775 (1956).
[19] Emphasis added.
[20] Webster's Encyclopedic Unabridged Dictionary of the EnglishLanguage 558-559 (3d ed., Webster, 1996).
[21] Id. at 1529.
[22] As a separate but related matter, we have examined the actual data collection forms used by the Department of Justice Criminal Justice Statistics Center and disseminated to local law enforcement agencies for the reporting of anti-reproductive-rights crime. We find that the directions and instructions relative to these forms convey to the local agencies that they are to submit, on a monthly basis, a summary report of all anti-reproductive-rights crimes reported during the previous month and an individual incident report for each such crime reported during that period.
[23] Diamond Multimedia Sys., 19 Cal. 4th at 1047; Snook,16 Cal. 4th at 1215.
[24] Renee J. v. Superior Court, 26 Cal. 4th 735, 744 (2001) (quotingMarshall M. v. Superior Court, 75 Cal. App. 4th 48, 55 (1999)). *Page 1