Filed 3/6/24  P. v. Higgins CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>RILEY KYLE HIGGINS,<br><br>Defendant and Appellant. | E081027<br><br>(Super. Ct. No. RIF2200540)<br><br>PUBLIC—REDACTED VERSION OF OPINION<br><br>Redacts material from sealed record.[1] |

APPEAL from the Superior Court of Riverside County.  Emma C. Smith, Judge. Affirmed.

Sheila O'Connor, under appointment by the Court of Appeal, for Defendant and Appellant.

---

[1]  In accordance with California Rules of Court, rules 8.45 and 8.46(f)(4) we have prepared both public (redacted) and sealed (unredacted) versions of this opinion.  We hereby order the unredacted version of this opinion sealed.

1

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Senior Assistant Attorney General, A. Natasha Cortina and Melissa Mandel, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

Defendant and appellant Riley Kyle Higgins appeals the order denying his motion for mental health diversion (the Motion) on two grounds: (1) that the trial court abused its discretion by allegedly basing its denial on the monetary cost of the proposed treatment plan and (2) that this impermissible consideration of monetary cost was an equal protection violation. The People argue that the trial court did not abuse its discretion because it based its decision on the following permissible factors: the insufficiency of the treatment that defendant would have received under diversion, a finding that defendant posed an unreasonable risk to public safety, and the inadequacy of the supervision that diversion would have provided. In the alternative, they argue that any reference to cost was harmless error.

We find that the trial court did not consider, let alone base its denial on, the monetary cost of the proposed mental health treatment plan. It instead relied on permissible factors to render its decision. We therefore affirm the trial court's ruling.

## FACTUAL AND PROCEDURAL HISTORY

On February 2, 2022, defendant entered the bathroom of a grocery store and ignited two fires.[2]  The store's employees discovered and extinguished the fires before they caused structural damage or personal injury.  Defendant was quickly apprehended, arrested, and charged with one count of committing arson during a state of emergency (Pen. Code,[3] §§ 451, subd. (c), 454, subd. (a)(2)), an enhancement for a previous arson conviction (§§ 452, subd. (c), 451.1, subd. (a)(1)), a serious felony enhancement for a prior robbery conviction (§ 667, subd. (a)(1)), and a strike for said robbery conviction (§ 667, subd. (e)(1)).

---

[2]  In discussing portions of the probation report, we are cognizant of section 1203.05, which limits (but does not entirely preclude) public access to the probation report 60 days after judgment is pronounced or probation is granted.  The Legislature's intent in cloaking the report with conditional confidentiality was to restrict access only to personal information about a defendant (such as details concerning his or her family background, medical and psychological condition, financial status, military record, and substance abuse history) not nonpersonal information, such as the factual summary of an offense and the evaluations, analyses, and recommendations of the probation officer. (*People v. Connor* (2004) 115 Cal.App.4th 669, 695-696.)  "[I]n a given case, the report may not contain any personal information; it may contain only personal information that is readily available in other public documents; and the probation report contains much nonpersonal information." (*Id.* at p. 690.)  In apparent recognition of this, appellate courts sometimes quote from a probation report's factual summary of the offense (see, e.g., *People v. Salazar-Merino* (2001) 89 Cal.App.4th 590, 594-595); *People v. Mickens* (1995), 38 Cal.App.4th 1557, 1559-1560).  We abide by these limitations in our opinion.

[3]  All further statutory references are to the Penal Code unless otherwise indicated.

On April 8, 2022, defendant filed the Motion, in which he argued that he was eligible and suitable for the mental health diversion program based on his mental health diagnosis.[4]  On July 25, 2022, the trial court denied the Motion.

On March 24, 2023, defendant pled guilty to committing arson during a state of emergency and also admitted to the enhancements and prior strike.  The trial court sentenced him to 10 years in state prison.  After the court entered judgment, defendant obtained a certificate of probable cause and timely appealed.  The parties' briefs were filed under seal to protect defendant's medical history.

## DISCUSSION

A.     STANDARD OF REVIEW

A trial court's denial of a motion for mental health diversion is appealable upon timely notice and a certificate of probable cause in the same manner that an order denying drug diversion is, i.e., " 'subject to review on appeal from a judgment in the criminal proceedings.' " (*People v. Qualkinbush* (2022) 79 Cal.App.5th 879, 888, quoting *Morse v. Municipal Court* (1974) 13 Cal.3d 149, 155.)

"A trial court's ruling on a motion for mental health diversion is reviewed for an abuse of discretion, and factual findings are reviewed for substantial evidence." (*People v. Whitmill* (2022) 86 Cal.App.5th 1138, 1147 (*Whitmill*).)  "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable

---

[4]  Neither his mental health diagnosis nor its role in defendant's commission of the offense is at issue in this appeal.  Therefore, out of respect for defendant's privacy, we do not identify the specific nature of his disorder.

person could agree with it," and whether a trial court's decision was irrational or arbitrary depends on the applicable "legal principles and policies that should have guided the court's actions." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)

It follows that a trial court has abused its discretion when its ruling was based on "impermissible factors" (*People v. Carmony*, *supra*, 33 Cal.4th at p. 378) or an "incorrect legal standard" (*People v. Knoller* (2007) 41 Cal.4th 139, 156). Here, defendant argues that the trial court abused its discretion by basing its denial on an impermissible factor: the monetary cost of diversion.

B     THE STATUTORY FRAMEWORK FOR MENTAL HEALTH DIVERSION

"A basic canon of statutory interpretation is that statutes do not operate retrospectively unless the Legislature plainly intended them to do so. [Citations.] A statute has retrospective effect when it substantially changes the legal consequences of past events . . . A corollary to these rules is that a statute that merely clarifies, rather than changes, existing law does not operate retrospectively even if applied to transactions predating its enactment. We assume the Legislature amends a statute for a purpose, but that purpose need not necessarily be to change the law. [Citation.] Our consideration of the surrounding circumstances can indicate that the Legislature made material changes in statutory language in an effort only to clarify a statute's true meaning. [Citations.] Such a legislative act has no retrospective effect because the true meaning of the statute remains the same." (*Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 243.)

Defendant filed the Motion under section 1001.36, which "authorizes pretrial mental health diversion for defendants with qualifying mental health disorders." (*Whitmill*, *supra*, 86 Cal.App.5th at p. 1147.) The purpose of the program is to "mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety," allow "local discretion and flexibility for counties in the development and implementation of diversion for individuals with mental disorders," and "meet[] the unique mental health treatment and support needs of individuals with mental disorders." (§ 1001.35.)

We note that the trial court issued its ruling on July 25, 2022, on which date an older version of section 1001.36 was effective. The current statute sets forth a two-part test for ruling on a request for diversion. (§ 1001.36, subd. (a).) However, the earlier version simply stated, "On an accusatory pleading alleging the commission of a misdemeanor or felony offense, the court may, after considering the positions of the defense and prosecution, grant pretrial diversion to a defendant pursuant to this section if the defendant meets all of the requirements specified in paragraph (1) of subdivision (b)." (Former Pen. Code, § 1001.36, subd. (a), added by Stats. 2018, c. 34 (A.B.1810), § 24, eff. Jun. 27, 2018, and amended by Stats. 2022, c. 47 (S.B.184), § 38, eff. June 30, 2022.)[5]

These requirements were: (1) the court's satisfaction that the defendant suffers from a qualifying mental disorder, (2) the court's satisfaction that the "mental disorder

---

[5] Further citations to "Former section 1001.36" refer exclusively to this version, i.e., the version that was effective on July 25, 2022.

6

was a significant factor in the commission of the charged offense," (3) a qualified mental health expert's opinion that "the defendant's symptoms of the mental disorder motivating the criminal behavior would respond to mental health treatment," (4) the defendant's consent to diversion and waiver of his right to a speedy trial, (5) the defendant's agreement to comply with treatment as a condition of diversion, and (6) the court's satisfaction that "the defendant will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community." (Former § 1001.36, subd. (b)(1).)

The current enactment is not significantly different. The main difference is that the current statute divides the inquiry into a two-part test: the court must first determine if the defendant is "eligible" for diversion, and then find that he is "suitable" for diversion before it can, "in its discretion, and after considering the positions of the defense and prosecution, grant pretrial diversion." (§ 1001.36, subd. (a).) Of the six requirements in the former version of the statute, the defendant must satisfy the first two in order to be eligible for diversion and the last four in order to be suitable. Thus, all six of the elements that were required when the trial court made the ruling before us are still required to grant mental health diversion today.

Because both versions of the statute require the same elements and the newer version has merely divided the inquiry into two parts, we do not find the statute substantially changed. We therefore find no retroactive applicability and shall apply the statute as it was effective at the time of the lower court's ruling. We look to the amendment for clarification of the Legislature's intent.

7

### 1. *PROCEDURAL HISTORY*

As we explained, *ante*, the earlier version of section 1001.36 did not explicitly set forth a two-part test, even though all six elements remain the same. Therefore, while a court today would first determine a defendant's eligibility and then, if applicable, his suitability for diversion, this two-step process was not required at the time of the challenged ruling.

Nevertheless, the statute did permit the trial court to, "[a]t any stage of the proceedings . . . require the defendant to make a prima facie showing that the defendant will meet the minimum requirements of eligibility for diversion and that the defendant and the offense are suitable for diversion. . . . If a prima facie showing is not made, the court may summarily deny the request for diversion or grant any other relief as may be deemed appropriate." (Former § 1001.36, subd. (b)(1).)

On April 22, 2022, the trial court here first conducted a hearing solely on defendant's prima facie eligibility for diversion. At this hearing, the People submitted on their opposition, which did not dispute defendant's qualifying diagnosis. They argued, however, that he was ineligible for diversion because he had failed to establish that his disorder played a significant role in the commission of the offense and that he would not pose an unreasonable risk of danger to the public. The trial court found that defendant met the minimum eligibility requirements and set a hearing on the question of suitability.

Then, at the hearing on suitability that occurred on July 25, 2022, the trial court concluded that defendant was not suitable for diversion and therefore denied the Motion. It explained, "The Court does not find that [defendant] is a suitable candidate for Mental

8

Health Diversion, nor is the treatment plan, as currently proffered, is [*sic*] suitable for treatment through Mental Health Diversion.  This is an individual, and I understand it's nails on a chalkboard to listen to, but I do want to make the record that he's on probation, currently for a violation of PC 452, subdivision (c); as well as a vandalism felony, for which I believe he was granted a *Romero* in order to be placed on probation for that case. While these cases were in that status, he was alleged to have committed a new arson. And a violation of 452, sub (c) was alleged, along with the prior conviction referenced, the strike priors and the nickel prior.  He is someone who requires much more supervision than what Mental Health Diversion could afford, is designed to afford, and I believe that he is unsuitable based on that."

Defendant now contends that this statement from the bench indicates that it impermissibly based its decision on "the cost of the potential mental health program." He argues this was an abuse of discretion.

We agree that the monetary cost of a defendant's proposed treatment plan should not be considered when ruling on a motion for mental health diversion.  The statute gives trial courts a wide berth to either grant or deny pretrial diversion once the requisite findings on eligibility and suitability are made; we therefore do not believe the courts are *limited* to the elements in section 1001.36.  Still, their analyses must stay within the scope of their discretionary power.

## 2.    *THE SCOPE OF THE COURT'S DISCRETION*

We reiterate that the trial court's discretionary power is bounded by the applicable legal principles.  For example, when it ruled on a defendant's request for military pretrial

9

diversion, the Sixth District wrote, "A trial court lacking specific, statutory criteria to guide its suitability determination is not operating in a vacuum; that the statute imposes no restrictions on what the court may consider does not alter the court's fundamental duty to exercise discretion consistent with the principles and purpose of the governing law. [Citation.]  But neither do we view lawful limits on the exercise of discretion as a basis for limiting the court's consideration of factors or criteria that it deems relevant, so long as that assessment does not reveal an erroneous understanding of or ' "transgress[] the confines of the applicable principles of law" ' [citation].  The discretion to consider a defendant's suitability for pretrial military diversion necessarily requires discretionary judgments about which criteria or factors best determine suitability, and both operations of discretion must be informed by the legal principles and purpose of the statute guiding the court's actions." (*Wade v. Superior Court* (2019) 33 Cal.App.5th 694, 710.)  The Sixth District then evaluated whether the factors that the trial court relied on when it denied the defendant's request for military diversion were consistent with the program's purpose. (*Id.* at p. 714.)

Here, the mental health diversion program's purpose is "to keep people with mental disorders from entering and reentering the criminal justice system while protecting public safety, to give counties discretion in developing and implementing diversion across a continuum of care settings, and to provide mental health rehabilitative services.  [Citation.]  The Legislature intended the mental health diversion program to apply as broadly as possible." (*Whitmill*, *supra*, 86 Cal.App.5th at p. 1149.)  When it developed the statute authorizing the program, the Legislature conveyed that the counties

10

would be responsible for developing the program and providing the "clinically appropriate" services and treatment to the participants in their jurisdiction. (Sen. Rules Com., Off. Of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1810 (2017-2018 Reg. Sess.) as amended Jun. 12, 2018, p. 3.)

Based on this background, we do not believe the trial court should consider the monetary cost of a defendant's proposed treatment plan when ruling on a motion for mental health diversion. The plain language of the statute gives the counties "discretion" to develop and implement the diversion program and provide the proffered services. The courts, in turn, trust that a proposed treatment plan is financially feasible for the county since it is recommended by the county itself.

We therefore agree with defendant that if a trial court relies on the "cost" of diversion as a basis for denial, it has abused its discretion. However, that is not what the trial court has done here.

<ul><li>a. <u>There is no evidence that the trial court considered the "cost" of diversion when it denied the Motion.</u></li></ul>

Defendant repeatedly argues that the court "cit[ed] cost as the primary reason for its decision" to deny the request for diversion. While he never explicitly divulges what exactly the trial court said or did to cause him to believe this, he quotes the entirety of the court's explanation for its ruling. Upon reading this explanation, we surmise that defendant's argument is based on the court's use of the word "afford." The trial court had stated that defendant "is someone who requires much more supervision than what Mental Health Diversion could afford, is designed to afford, and I believe that he is

11

unsuitable based on that." Defendant seems to imply that, by using the word "afford," the court "emphasized the cost of the potential mental health program . . . as the reason it denied the defense motion for diversion."

This is an unreasonable interpretation of the trial court's words. As the People point out, the court was using the word "afford" as a synonym for "provide." We know this due to the surrounding language: The court began by acknowledging that defendant had committed the arson he was being charged with while on probation for another arson and for felony vandalism. It then emphasized the level of "supervision" that defendant "require[d]." We note that the diversion program operates by postponing prosecution "to allow the defendant to undergo mental health treatment" outside the criminal justice system, i.e., in the community. (§§ 1001.35, 1001.36, subd. (f).) Based on this context, when the court stated that defendant was "someone who requires much more supervision than what Mental Health Diversion could afford, is designed to afford," it was conveying its belief that defendant needed more supervision than that which he would have received from being treated in a community setting; in other words, he needed more supervision than the diversion program would provide. The court was not referring to the monetary cost of diversion.

We draw further support for this interpretation from the fact that the trial court was never made aware of the monetary cost of diversion. **[Redacted.]**

**[Redacted.]** It was not an "issue of cost," as defendant describes it, but rather an issue of where he could live while undergoing treatment. This particular defendant

12

needed financial assistance to secure housing because, as he states in his original motion, he was a member of the unhoused population.

We therefore conclude that, based on a reasonable interpretation of the record, the trial court was not relying on, let alone referring to, the monetary cost of diversion when it denied defendant's Motion. As this was defendant's only argument as to the trial court's decision-making process, we hold that the court did not abuse its discretion.[6]

> b. The trial court properly considered whether diversion would meet defendant's treatment needs and the interests of the community.

Though unnecessary to our analysis, we note for the parties' benefit that the trial court did rely on permissible factors when it denied the diversion request. While the statute identifies the requisite *elements* for granting pretrial diversion, "a diversion order is expressly discretionary with the court, even when all of the criteria are met." (*People v. Doron* (2023) 95 Cal.App.5th 1, 9.) In fact, subdivision (c) of the former section 1001.36, and subdivision (f) of the current section 1001.36, set forth permissible *factors* that the court may consider. They both state that pretrial diversion is subject to, *inter alia*, the court's satisfaction that diversion "will meet the specialized mental health treatment needs of the defendant" and is consistent with "the interests of the community." (§ 1001.36, subd. (f)(1)(A); former § 1001.36, subd. (c).)

---

[6] Because we hold that the trial court did not consider the monetary cost of diversion when it rendered its decision, we do not reach defendant's alternative argument that a denial based on the cost of diversion is a violation of equal protection.

Here, the trial court properly based its denial on its conclusion that diversion would provide inadequate supervision for this defendant. We infer from this reasoning the trial court's determination that defendant needed a higher level of supervision to succeed with his treatment or refrain from reoffending. Both are acceptable considerations.

c.     We make no ruling on the sufficiency of the evidence supporting the court's factual findings.

Because the trial court's denial of the Motion was based on permissible factors, we decline to reach a holding on the People's argument that the court "impliedly" found that defendant "posed an unreasonable risk of danger to public safety"[7] within the meaning of former section 1001.36, subdivision (b)(1)(F), and current section 1001.36, subdivision (c)(4).

We note, however, that the standard for whether a defendant would pose an unreasonable risk of danger to public safety is based on the definition contained in section 1170.18. (§ 1001.36, subd. (c).) According to section 1170.18, an "unreasonable risk of danger to public safety" is "an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph

---

[7] The Second District Court of Appeal held in *People v. Pacheco* (2022) 75 Cal.App.5th 207 that a defendant's likelihood of committing arson could constitute "an unreasonable risk of danger to public safety," even though arson is not one of the offenses specified in the statutory definition of violent felonies. (*Id*. at p. 213.) It did so by concluding that this list of felonies is not exclusive for the purpose of determining whether a defendant is suitable for diversion. (*Ibid.*) At this time, we decline to state our opinion of this interpretation because we instead hold that the likelihood of reoffending is relevant to the "interests of the community" factor.

(2) of subdivision (e) of Section 667." (§ 1170.18, subd. (c).) These "violent felonies" consist of "sexually violent" offenses, sexual assault of a minor, homicide or attempted homicide, solicitation to commit murder, assault with a machine gun on a peace officer or firefighter, possession of a weapon of mass destruction, and any serious violent felony that is "punishable in California by life imprisonment or death." (§ 667, subd. (e)(2)(C)(iv).)

When determining whether the defendant will pose an unreasonable risk of danger to public safety, "[t]he court may consider the opinions of the district attorney, the defense, or a qualified mental health expert, and may consider the defendant's treatment plan, the defendant's violence and criminal history, the current charged offense, and any other factors that the court deems appropriate." (§ 1001.36, subd. (c)(4).) "[T]he risk of danger is narrowly confined to the likelihood the defendant will commit a limited subset of violent felonies," and is, therefore, a "high standard." (*People v. Moine* (2021) 62 Cal.App.5th 440, 450-451.)

Neither the parties nor the trial court refer to this definition in their analyses; but regardless, such a finding, while relevant, is not required to *deny* a motion for diversion.

We similarly acknowledge that defendant mentioned, in passing, that the court abused its discretion because it "made no findings as to why" he was unsuitable for diversion. As we explained, the trial court found that defendant required more supervision that the diversion program could offer him. This was a permissible basis for denying the Motion. Defendant contends that the trial court "made no findings," but only to support his argument that the denial was based on cost. Having failed to recognize the

15

court's factual findings, defendant at no point argues that the evidence was insufficient to support them.  Therefore, we express no opinion on the sufficiency of the evidence.

C.    CONCLUSION

Defendant's sole argument on appeal is that the trial court abused its discretion by basing its denial of his request for diversion on the monetary cost of his participation.  But the record reflects that the trial court did not consider, let alone center its ruling on monetary cost.  Therefore, we find no abuse of discretion.

**DISPOSITION**

The trial court's order is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
                                                                                         J.


We concur:


McKINSTER
                    Acting P. J.


RAPHAEL
                    J.

16